27 So.2d 479

**ODOM v. AVERETT et al.**

1 Div. 256.

Supreme Court of Alabama.

Oct. 10, 1946.

Smith, Hand & Arendall, of Mobile, for appellant.

Gaillard & Gaillard and McCorvey, Turner & Rogers, of Mobile, for appellees.

LAWSON, Justice.

The bill in this case was filed by the appellant against the appellees in the form of a bill to quiet title to certain real estate situated in Mobile County, Alabama. The manifest purpose of the bill is to redeem from an alleged void tax sale.

Appellant, who will be hereafter referred to as the complainant, was the owner of the property at the time it was sold for taxes on, to wit, the 23rd day of July, 1931. Said land was bid in by the State at the tax sale. Ruth Turner, one of the respondents, secured a deed to the property from the State on February 24, 1939. Respondent Humble Oil & Refining Company claims a leasehold interest in the property from Ruth Turner. Respondent Annetta Averett purchased the property from Ruth Turner on March 16, 1943. The other respondents, with the exception of Jesse J. Cole, claimed interest in the gas, oil and mineral rights under conveyances from Annetta Averett.

The cause was submitted on the pleadings and proof which was taken ore tenus. The trial court rendered a decree wherein complainant was denied relief and title to the property was declared to be in respondent Annetta Averett, subject only to the rights and interests of her co-respondents. The appeal was taken by the complainant from the decree denying him the relief for which he prayed. We are not here concerned with the rights of the other respondents as against respondent Annetta Averett.

Respondents insist that the complainant's action was barred at the time of the commencement of the suit by virtue of the provisions of § 295, Title 51, Code of 1940, which is as follows:

"No action for the recovery of real estate sold for the payment of taxes shall lie unless the same is brought within three years from the date when the purchaser became entitled to demand a deed therefor; but if the owner of such real estate was, at the time of such sale, under the age of twenty-one years, or insane, he, his heirs or legal representatives, shall be allowed one year after such disability is removed to bring suit for the recovery thereof; but this section shall not apply to any action brought by the state; nor to cases in which the owner of the real estate sold had paid the taxes, for the payment of which such real estate was sold, prior to such sale; nor shall they apply to cases in which the real estate sold was not, at the time of the assessment, or of the sale, subject to taxation."

The above-quoted statute, which is generally referred to as "the short statute of limitations," has application when a party comes into equity to quiet title as well as in ejectment suits. Long et al. v. Boast, 153 Ala. 428, 44 So. 955.

It has application to cases where the land is purchased from the State as well as to instances where the purchase is made from the tax collector. Doe ex dem. Evers v. Matthews et al., 192 Ala. 181, 68 So. 182; Howard v. Tollett, 202 Ala. 10, 79 So. 309.

It seems to be admitted that the tax sale was void and insufficient to convey title to the lands, in that the assessment was made in the name of and against a person who had no interest in the land. Appellant contends that the tax sale being void, the above-quoted short statute of limitations has no application.

§ 3107 of the Code of 1923, which was in force at the time the property was sold for taxes and bought in by the State, expressly provided that the statute of limitations of three years for the recovery of lands sold for payment of taxes did not apply to void tax sales. But this provision excepting void tax sales from the operation of the statute was omitted in the Revenue Act of 1935. General Acts 1935, p. 366, Sec. 260. § 295, Title 51, Code of 1940, which was in effect at the time of the filing of this suit, is in the exact language of Section 260 of the 1935 act, supra, and is the statute which has application to the instant case. Under our decisions, statutes of limitations affect the remedy and unless the act creating the limitation expressly shows a contrary intention, the statute of limitations existing at the time of trial applies. Morris v. Mouchette, 240 Ala. 349, 199 So. 516; Doe ex dem. Trotter v. Moog, 150 Ala. 460, 43 So. 710.

§ 295, Title 51, Code of 1940, is in all material respects the same as § 2311, Code of 1907. In holding that said § 2311, Code of 1907, was applicable to a tax sale when the assessment was made in the name of and against a person who had no right, title, or interest in the land, this court in the case of Williams v. Oates, 209 Ala. 683, 96 So. 880, said on rehearing:

"The court en banc has reconsidered the question, elaborately discussed in the briefs of counsel, whether the cited short statute of limitation of three years (Code, § 2311) is applicable to a tax sale where, as here, the assessment of the land was made in the name of and against a person who had no right, title, or interest in the land, and the purchasers went into adverse possession under their tax deed and remained in such possession for three years and more before action commenced by the owner of the land at the time the sale for taxes was had; the owner not being shown to be or to have been within any of the exceptions provided in the statute. Code, § 2311.

"Under a statute in present respects substantially similar to Code, § 2311, this court decided in Lassitter v. Lee, 68 Ala. 287, 291, that, notwithstanding the tax sale is void, the short statute of limitations is operative and effective, and, 'whether the sale be valid or void, the occupancy of the land under a tax deed, executed and delivered in conformity to law, for a period of five years [now three years] from such delivery, would be a good defense to the action.' This deliverance was made at the December term, 1880. In nature the pres-

ent statute (section 2311) is the same as its predecessor considered in 1880; the just exceptions have been since introduced. The court is not thought to be now at liberty to depart from the rule of Lassitter v. Lee, supra; so notwithstanding the Iowa court, whence it is said the original statute came, has accepted the view that a similar limitary statute in respect of tax sales has no application to a sale that was void. Long v. Boast, 153 Ala. 428, 44 So. 955; Howard v. Tollett, 202 Ala. 11, 79 So. 309."

■ Although the tax deed was invalid it gave color of title and possession held under it is adverse. In the case of Pugh v. Youngblood, 69 Ala. 296, in writing to this question for the court, Mr. Chief Justice Brickell said: "An outstanding conveyance, made on a sale of lands for the payment of taxes, casts a cloud upon the title, embarrassing alienation. Though it may not have recited facts which would support the sale, and was therefore invalid upon its face, it was color of title; and a possession taken and held under it was adverse, and if continued for the period prescribed by the statute of limitations, would not only bar the entry of the true owner, but ripen into an indefeasible title. Dillingham v. Brown, 38 Ala. 311." To like effect are the following decisions of this court: Long et al. v. Boast, supra; Perry v. Marbury Lumber Co., 212 Ala. 542, 103 So. 580; Wright et al. v. Louisville & N. R. Co., 203 Ala. 118, 82 So. 132; Boone et al. v. Gulf, F. & A. R. Co., 201 Ala. 560, 78 So. 956; Hooper v. Bankhead & Bankhead, 171 Ala. 626, 54 So. 549.

■ In view of the above we are of the opinion that § 295, Title 51, supra, is not rendered inapplicable to the present case because the tax sale was void.

■ § 295, Title 51, supra, provides in effect that the statute begins to run in favor of the purchaser at a tax sale when he became entitled to demand a deed therefor, but this court has held that the statute does not begin to run until possession of the land is taken. The rule is stated in Loper v. E. W. Gates Lumber Company, 210 Ala. 512, 98 So. 722, 723, as follows: "The statute of limitations does not begin to run in favor of the purchaser at a tax sale until the purchaser is in actual adverse possession of the land, and until the day 'when the purchaser became entitled to demand a deed therefor.'" Long v. Boast, supra; Bedsole v. Davis, 189 Ala. 325, 66 So. 491; Tidwell v. McCluskey, 191 Ala. 38, 67 So. 673.

Complainant insists that the evidence in this case does not justify a finding that the respondents have been in adverse possession of the property and that therefore § 295, Title 51, supra, does not bar his action to redeem even though more than three years elapsed between the time Mrs. Ruth Turner secured her deed from the State and the date on which this suit was instituted.

At the time the property was sold for taxes it was open, unfenced land, one-third of which was swamp land. It had never been cultivated nor had anyone ever lived on it. There is no evidence tending to show any change in the nature or condition of the property from the time it was sold for taxes until it was purchased by Mrs. Turner, except that complainant in 1932 cut most of the timber off that portion of the land not in the swamp. But there is evidence which if believed justifies the conclusion that the complainant had abandoned this property after he removed the timber therefrom on the belief that it was then valueless and that his present interest in it was engendered by the solicitation of persons interested in securing oil rights. True, complainant testified that he and his family had been continuously in the peaceable possession of this property since 1925. But this statement is not borne out by his other testimony. Complainant admitted that he had done nothing on the land since Mrs. Turner secured her deed from the State other than to go on it about twice a year hunting for his livestock which was on open range and used this property "off and on just like any other open land." His livestock ranged unattended and would range from Washington County to the Gulf. At the time the property was sold for taxes the complainant lived only two miles away but at the time Mrs. Turner secured her deed in 1939 complainant lived sixteen to eighteen

miles from this property. He has neither assessed the property nor paid taxes on it since it was sold for taxes. We do not think complainant's evidence shows anything more than that he happened to go on this property searching for his livestock when it was on open range just as he went on all other unfenced property. There is nothing in his testimony which substantiates his statement that he was in possession of the property. We think the evidence fully justifies a finding that complainant had abandoned the lands here involved.

On the other hand, the evidence for respondents shows that within a month after Mrs. Turner secured her deed from the State, her husband, D. L. Turner, acting as her agent and in her behalf, had this property surveyed by one H. G. Miller. The trees around the boundaries of the property were blazed, corner posts were erected and twelve or fifteen signs placed on the property which signs, according to one witness, bore the words "No Trespass, Ruth Turner." The signs warning against trespass were placed around the boundaries of the property.

Also within a month after Mrs. Turner secured her deed from the State, her husband, acting in her behalf, "chipped" the trees on the property and hung 2100 turpentine cups, most of which were hung on the trees in the swamp but two or three hundred cups were hung on trees on the high part of the property. According to the testimony of respondents the turpentine cups and signs were so placed that they easily could be seen by anyone going on the property. They remained there for more than four years and were on the property when it was sold by Mrs. Turner to the respondent Mrs. Annetta Averett, in March of 1943. In fact Mrs. Averett purchased the cups, paying ten cents for each of them.

During 1939, 1940 and 1941, the property was actively turpentined by Mr. Turner as agent for his wife. He went on the property at least once a week during the turpentine season for the purpose of assisting and supervising the turpentine workers. During the "off" season he con-

structed fire lanes for the protection of the trees. The property was not turpentined during 1942 and that part of 1943 before it was conveyed to Mrs. Averett. The cups and chipped places on the trees remained, however, and gave notice to all who came on the property that it was a turpentine orchard. There is nothing in the evidence to indicate that the failure of Mrs. Turner to turpentine the property after 1941 constituted an abandonment. In fact, there is evidence tending to show that the failure to turpentine during that period was attributable to the scarcity of labor.

The lands were assessed to Mrs. Turner and taxes paid by her husband from the time she purchased it until it was sold to Mrs. Averett, a period of more than four years.

It is the contention of complainant that the evidence for respondents shows nothing more than mere casual acts of ownership, rare and widely separated acts which do not show a possession sufficient for the purpose of acquiring title by adverse possession. Reliance is had upon the cases of Tensaw Land & Timber Co. v. Rivers, 244 Ala. 657, 15 So.2d 411, and Rucker v. Jackson, 180 Ala. 109, 60 So. 139, Ann.Cas. 1915C, 1058.

We cannot agree with this contention of complainant, nor do we think the two cases last above cited are here controlling. The facts in the instant case are of an entirely different nature from the facts in those cases. The use to which Mrs. Turner put this property gave notice of her occupancy to anyone who came near it. The cups and chipped places upon the trees clearly indicated that the property was being used as a turpentine orchard and the "No Trespass" signs bearing her name pointed to Mrs. Turner as the occupant. Such was the condition of the property for more than four years while it was held by Mrs. Turner under her tax deed.

The turpentining of pine lands was held to be such an occupancy of land as to constitute adverse possession in the case of Bedsole et al. v. Davis, supra [189 Ala. 325, 66 So. 492], wherein it is said: "If

the evidence for the defendant is true, Martin bought the lands when they were sold for taxes in 1885, and while, for several years thereafter, the lands were permitted to remain in timber and without visible signs of occupation, nevertheless, in 1900, the pine trees upon the land were blazed for turpentine, and for fully five years after that they were in continuous occupancy under claim of right by Martin's licensees. True, no houses were built upon the lands, and they were not cleared of timber nor cultivated. They were, however, turpentined and logged during the above period. It is impossible to turpentine a pine tree without so marking it as to attract the notice of those who pass it. A turpentine orchard in a forest heralds its existence, and we can conceive of but few ways whereby a person can give more effective notice of his occupancy of a tract of pine land than to blaze the trees upon it for turpentine, and then to gather the turpentine from the trees so blazed." To like effect is the decision of this court in the recent case of Moorer v. Malone, Ala.Sup., 26 So.2d 558.

The testimony in this cause was taken ore tenus before the trial judge. Where the testimony is thus taken, the trial judge has the witnesses before him, hears their testimony, and observes their demeanor on the stand, and unless his judgment is clearly wrong it will not be here disturbed. Bonds v. Bonds, 234 Ala. 522, 175 So. 561; Puckett v. Puckett, 240 Ala. 607, 200 So. 420.

As before indicated, we think that the evidence in this case, if believed, was sufficient to justify a finding by the trial court that the complainant had abandoned the property here involved and that Mrs. Ruth Turner, after she secured her deed from the State, was in the actual, peaceable, visible, adverse possession of the land, claiming it as her own from March, 1939, until March, 1943. This was before the lands were conveyed by Mrs. Turner to her co-respondent, Mrs. Annetta Averett, and this, under § 295, Title 51, Code of 1940, barred the plaintiff's right of action. Bedsole et al. v. Davis, supra; Capehart v. Guffey, 130 Ala. 425, 30 So. 390.

It results, therefore, that the decree of the lower court is affirmed.

Affirmed.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.