42 So.2d 609

### SINGLEY v. DEMPSEY.

2 Div. 245.

Supreme Court of Alabama.

Oct. 6, 1949.

Rehearing Denied Nov. 17, 1949.

Scott & Porter, of Chatom, for appellee.

Granade & Granade, of Chatom, for appellant.

680

LAWSON, Justice.

The appellant, Glenn G. Singley, instituted this proceeding on February 5, 1942, in the circuit court of Choctaw County, Alabama in equity, against appellant, Mrs. Lula E. Dempsey, and others. All respondents other than Mrs. Dempsey were subsequently eliminated by amendment.

Singley's bill was filed evidently under § 1109, Title 7, Code 1940, to quiet title. As here pertinent, the bill averred in substance that Singley was in the actual and peaceful possession of the SE ¼ of Section 34, Township 9 North, Range 2 West, Choctaw County, Alabama, title to which he acquired September 12, 1941, under a conveyance from Mrs. Ollie S. Granade, who had acquired title to the said quarter-section of land on December 11, 1926; that Mrs. Granade was in possession of the property on November 30, 1934, when she sold the timber thereon to the respondent, Mrs. Lula Dempsey, under which conveyance Mrs. Dempsey was given a period of six years within which to cut and remove the timber; that although Mrs. Dempsey's rights under the said timber deed expired on November 30, 1940, she was continuing to cut and remove timber from the land. The respondent was called upon to set forth her right, claim and interest in the said land. As here pertinent, the prayer of the bill was in substance that the title to the property be quieted and that it be decreed that the title thereto was vested in the complainant, Singley.

Mrs. Dempsey in her answer denied that complainant was in the actual and peaceful possession of the property. She admitted that her rights under the timber deed expired on November 30, 1940, but averred that she became the purchaser of the property at a tax sale on August 12, 1935, and received a deed thereto from the probate judge of Choctaw County on January 6, 1939. Respondent, in her answer, further averred, in substance, that immediately af-

ter the tax sale she went into the actual, peaceable, open, notorious and exclusive possession of the property and that such actual adverse possession has continued from the date of the tax sale down to and including the date of the filing of the answer; that relying on her tax title, she stopped cutting timber on the property in order that it might grow and that the failure of Mrs. Granade to redeem from the said tax sale within the statutory period allowed by law was the proximate cause of respondent's failure to exercise her timber rights granted under the timber deed. The answer was made a cross-bill in which respondent, cross-complainant, prayed that it be decreed that complainant had no right, title, interest or claim to the said property.

Thereafter, the complainant answered the cross-bill and amended his complaint so as to make it one to redeem from a tax sale under the provisions of § 296, Title 51, Code 1940, as well as a bill to quiet title under § 1109, Title 7, Code 1940.

Testimony was taken on three separate occasions over a long period of time. On August 13, 1946, the trial court decreed: (1) That complainant was entitled to redeem the property upon payment to the respondent, Mrs. Lula Dempsey, of the amount of money for which the land was sold, with interest at the rate of 8%, together with the amount of taxes subsequently paid by the said respondent, with interest at 8%. As to the taxes due on said property on October 1, 1946, it was decreed that the complainant pay to respondent the amount of such taxes, since the property was assessed to respondent for the tax year 1945-46; (2) that the respondent, Mrs. Lula Dempsey, have two years from the date on which the decree was filed, to wit, August 14, 1946, in which to exercise all rights which she originally acquired under the timber deed of November 30, 1934, including the right to cut and remove timber; (3) that the costs be paid one-half by the complainant and one-half by the respondent.

The complainant, Singley, has appealed to this court from that decree. Errors assigned by complainant, appellant, are: (1) That the court erred in requiring the

complaint, as a condition to redemption, to pay to respondent, appellee, all taxes paid by her, together with interest at 8%; (2) that the court erred in allowing respondent, appellee, two years from the date of the filing of the trial court's decree within which to exercise her rights under the timber deed of November 30, 1934.

By cross-assignments of error, as authorized by Rule 3 of Supreme Court Practice, Code 1940, Title 7 Appendix, 1947 Cumulative Pocket Part, (240 Ala. XVI), appellee contends that the trial court erred in decreeing that complainant, appellant, was entitled to redeem.

We will consider this contention of appellee before discussing appellant's assignments of error.

Appellee's main insistence in this connection is that appellant was not entitled to redeem because of the provisions of § 295, Title 51, Code 1940, commonly referred to as the short statute of limitations. The pertinent provisions of § 295, Title 51, supra, are as follows: "No action for the recovery of real estate sold for the payment of taxes shall lie unless the same is brought within three years from the date when the purchaser became entitled to demand a deed therefor; * * *."

■ Section 295, Title 51, supra, applies to proceedings in equity as well as in ejectment cases; it applies to void tax sales as well as to valid sales; it applies when the land is purchased from the State as well as in instances where the purchase is made from the tax collector. Odom v. Averett, 248 Ala. 289, 27 So.2d 479.

The respondent, appellee, did not get her tax deed until January 6, 1939, but she was entitled to demand it on, to wit, August 12, 1938, inasmuch as the tax sale was held on August 12, 1935. § 241, 1935 General Revenue Act, approved July 10, 1935, General Acts 1935, pp. 256, 360, § 276, Title 51, Code 1940; § 268, 1935 General Revenue Act, approved July 10, 1935, General Acts 1935, pp. 256, 368, § 303, Title 51, Code 1940.

■ However, the date on which the purchaser is entitled to demand a deed is not alone determinative of the time when the statute begins to run. It cannot begin to run before that time, but it does not necessarily begin to run on that date unless the purchaser is then in actual adverse possession of the property. The rule is stated in Loper v. E. W. Gates Lumber Co., 210 Ala. 512, 98 So. 722, 723, as follows: "The statute of limitations does not begin to run in favor of the purchaser at a tax sale until the purchaser is in actual adverse possession of the land, and until the day 'when the purchaser became entitled to demand a deed therefor.'" Odom v. Averett, supra; Lathem v. Lee, 249 Ala. 532, 32 So.2d 211.

■ This proceeding was begun on February 5, 1942; hence, in order for appellant's right of redemption under § 296, Title 51, Code 1940, to have been cut off by virtue of the provisions of § 295, Title 51, supra, it must appear that between August 12, 1938, and the date on which the proceeding was instituted, appellee was in the actual adverse possession of the land for a period of three years. In Moorer v. Malone, 248 Ala. 76, 26 So.2d 558, 559, where the tax purchaser invoked the provisions of § 295, Title 51, supra, Mr. Justice Stakely, writing for the court, said: "The essential elements of adverse possession are: (1) the possession must be hostile and under claim of right; (2) it must be actual; (3) it must be open and notorious; (4) it must be exclusive, and (5) it must be continuous. Chastang v. Chastang, 141 Ala. 451, 37 So. 799, 109 Am.St.Rep. 45; Montgomery v. Spears, 218 Ala. 160, 117 So. 753. It may be added that, 'To constitute an actual possession of land it is only necessary to put it to such use or exercise such dominion over it as in its present state it is reasonably adapted to.' Alabama State Land Co. v. Matthews, 168 Ala. 200, 53 So. 174, 175."

Mrs. Granade, under whom Singley, the appellant, claims title, purchased the property on December 11, 1926, at a sale for division of the proceeds among the heirs of Andy Koen, a Negro man who had homesteaded the said 160 acres of land. There were two houses on the land. One was located in the NW ¼ of the quarter-section. It was a log house and had been built and occupied by Andy Koen. At the time of Mrs. Granade's purchase, Joe.

Koen, a son of Andy, lived in this house, and with Mrs. Granade's permission continued to do so until his death. The time of the death of Joe Koen does not appear. The log house burned after Mrs. Granade's purchase, but the exact time of the burning is not shown in the evidence. The other house was located on the SW ¼ of the quarter-section and was occupied by John Koen, another son of Andy Koen.

Near each house was a "small patch" on which vegetables were grown. The land on which the houses were built and that used as "patches" did not constitute more than five of the 160 acres. The remainder of the land was covered by trees of varying size. The land as such has never been of much value, apart from the timber and mineral, gas and oil rights.

Mrs. Granade had the lines around the property surveyed and trees on the lines were blazed.

At the time of her purchase Mrs. Granade entered into an agreement with John Koen whereby he was to remain on the property as her agent to look after all the property, the land and timber. She also promised John Koen to deed him forty acres of the land when the timber was cut. This deed was never executed by Mrs. Granade inasmuch as prior to the time she sold to Singley, the timber had not been cut and removed. However, Singley agreed with Mrs. Granade that he would carry out such agreement and has executed such a conveyance, which has been placed in escrow awaiting the cutting of the timber.

Shortly after purchasing the property, Mrs. Granade sold the timber thereon to Standford Brothers, giving them a limited time within which to cut and remove it. They cut only a small portion of the timber before their rights expired.

Mrs. Granade also sold all mineral, gas and oil rights.

John Koen was still on the property, in accordance with his agreement with Mrs. Granade, when she sold the timber on the property to Mrs. Lula Dempsey, the appellee, and respondent below.

We are clear to the conclusion that at the time Mrs. Dempsey purchased the timber Mrs. Granade was in possession of the property through her agent, John Koen. John Koen was told of the sale of the timber and instructed not to interfere with Mrs. Dempsey's timber operations. He continued to occupy the property.

As before pointed out, the timber deed gave Mrs. Dempsey six years within which to cut and remove the timber, that is, until, to wit, November 30, 1934. It also expressly gave her the right of ingress and egress.

Mrs. Dempsey, shortly after the timber deed was executed, entered on the property and posted "No trespass" signs, and began cutting and removing timber. Such operations continued until the middle of 1936, when they were stopped by Mrs. Dempsey on the theory that she had acquired title to the land at the tax sale on August 12, 1935, and therefore she need not cut the timber within the six-year period of time given her in the timber deed.

Since this proceeding was instituted on February 5, 1942, and the right to cut timber under the timber deed did not expire until November 30, 1940, Mrs. Dempsey, in order to have been in the actual adverse possession of the property for three years prior to the time this suit was begun, must rely on her possession during the period of time covered by the timber deed as being adverse to Mrs. Granade.

The said timber deed of November 30, 1934, contained the followindg provisions:

" * * * together with the right of ingress, egress and regress for said Mrs. Lula Dempsey, her agents, servants, contractors, employers, heirs and assigns, over, across and along, said lands, and any other lands owned by us for the purpose of cutting, removing and manufacturing said timber or for any other lawful purpose. Also free rights of way over and across said lands or any other lands owned by us for such private dirt roads, railroads, ditches and canals as the said Mrs. Lula Dempsey may desire to contract, build, open or operate.

"It is also agreed that Mrs. Lula Dempsey, her heirs and assigns and successors, be allowed six years from the date hereof within which to cut and remove said timber herein conveyed."

■ Under the terms of the timber deed, Mrs. Dempsey became the owner in fee of the timber which, according to our decisions, is an interest in the land as distinguished from an interest in the trees considered as chattels. But the fee simple title to the soil remained in the grantor, Mrs. Granade. Henry et al. v. White, 218 Ala. 175, 118 So. 174; Shepard v. Mount Vernon Lumber Co., 192 Ala. 322, 68 So. 880, 15 A.L.R. 23.

■ Under the terms of the said timber deed, Mrs. Dempsey had the right to go on the land to cut and remove timber and to do those things reasonably necessary to the accomplishment of that end. Such right is in the nature of an easement. Vizard v. Robinson, 181 Ala. 349, 61 So. 959; Tippins v. Howard et al., 189 Ga. 193, 5 S.E.2d 750.

Hence, Mrs. Dempsey's original entry on the land was not hostile to Mrs. Granade but was, on the contrary, permissive and in recognition of Mrs. Granade's title to the land.

■ Under such circumstances, asserted adverse possession does not become hostile in absence of positive disavowal of the permissive or subservient holding. In Lecroix v. Malone et al., 157 Ala. 434, 441–442, 47 So. 725, 728, the rule is stated as follows:

"It is firmly settled, by repeated decisions on our part, that a permissive possession, whether expressly so, or one arising by implication in the case of a mistaken holding by an adjoining owner without any intention of claiming beyond the true line, is presumed to continue to be of the same character, until notice is brought home to the holder of the true title of the change of the permissive possession into one hostile and adverse.

"The theory upon which adverse possession becomes a perfect title is that the true owner has by his own fault and neglect failed to assert his right against the hostile holding for the full period of the statute.

"If the entry then, is not hostile and under claim of right in its inception, notice of any change in the character of the possession must be brought home to the owner to impute laches or neglect to him as the basis of limitations.

"Of course, we do not mean to say that this notice must be direct and express, but, if it rests upon implication, it must be founded upon such facts and circumstances as to bring home to the owner information that the holding has become hostile.

"'In such case, while it may be open to the jury to find from the circumstances of the possession that the owner had notice of its hostile and exclusive character, no exclusiveness of possession, no hostility, no claim of right antagonistic to the title will necessarily in any case take the place of direct proof of knowledge on the part of the owner that the possession is no longer held in subserviency to him.' Trufant v. White, 99 Ala. 526–535, 13 So. 83; Johnson v. Oldham, 126 Ala. 309, 28 So. 487, 85 Am.St.Rep. 30; Alexander v. Wheeler, 69 Ala. 332–340; Hess v. Rudder, 117 Ala. 525–528, 23 So. 136, 67 Am.St.Rep. 182."

Appellee, Mrs. Dempsey, admits that no direct or express notice was given Mrs. Granade after the purchase at tax sale that she was holding the land hostile to Mrs. Granade.

But appellee insists that the circumstances of her possession were such as to charge Mrs. Granade with knowledge of the nature of its hostile and exclusive character. The circumstances upon which Mrs. Dempsey relies are as follows: Immediately after the tax sale and during the six-year period covered by the timber deed, her agents surveyed the land, blazed the trees along the lines of the property, and "re-posted" it. None of these acts were inconsistent with her rights under the timber deed. She owned the trees and by seeking to protect them, Mrs. Granade was not notified that she was holding the land adversely. Likewise the fact that the property was surveyed and the trees along the line blazed would not indicate to Mrs. Granade an adverse holding. Such acts could have been done for the purpose of enabling her employees engaged in cutting and removing the timber to confine their activity to the trees which she owned.

Evidence for Mrs. Dempsey is to the effect that after the tax sale her husband,

acting on her behalf, told John Koen that she had purchased the property at tax sale but that he could continue to live on the property if he would look after it and would behave himself, and that Mrs. Dempsey gave John Koen permission to cultivate the cultivatable lands and to cut down trees with which to get lumber to put on his house. There is absolutely no evidence to the effect that Mrs. Granade had any knowledge of any dealings between Mr. Dempsey and John Koen. On the contrary, there is evidence tending to show that John Koen during this period of time was still acting as the agent of Mrs. Granade. It does not appear that Koen cultivated any more land after the tax sale than he had previously. The trees belonged to Mrs. Dempsey and the fact that her husband gave John Koen permission to cut some of them down could not operate as notice to Mrs. Granade of any hostile holding of the land by Mrs. Dempsey.

Nor did periodical inspection trips over the land by Mrs. Dempsey's agents constitute notice to Mrs. Granade of a hostile holding. Such action was entirely consistent with Mrs. Dempsey's rights under the timber deed.

■ After the tax sale Mrs. Dempsey assessed the property and paid the taxes thereon. But the payment of taxes on land is not of itself evidence of possession, but in connection with evidence of actual possession, it is admissible to show the extent of possession. Webb et al. v. Griffin, 243 Ala. 468, 10 So.2d 458, and cases cited.

■ We are clear to the conclusion that the evidence in this case does not justify a finding that prior to November 30, 1940, the date on which Mrs. Dempsey's rights expired under the timber deed, Mrs. Dempsey was in the actual adverse possession of the land. Since this suit was instituted within three years from that time, Mrs. Dempsey cannot avail herself of the provisions of § 295, Title 51, Code 1940, regardless of the nature of her possession subsequent to November 30, 1940.

■ It is settled that a bill filed under the statute to quiet title (§ 1109, Title 7, Code 1940), also may seek affirmative relief under § 296, Title 51, Code 1940.

Standard Contractors Supply Co. v. Scotch, 247 Ala. 517, 25 So.2d 257.

■ We have held in several cases that the purpose of § 296, Title 51, supra, was to save to an owner of land sold for taxes the right to redeem without limit of time, provided he has such possession as may be sufficient for that purpose. He need not wait until the purchaser at tax sale sues to recover the land, but while so in possession he can go into equity to enforce his right to redeem. Tensaw Land & Timber Co. v. Rivers, 244 Ala. 657, 15 So.2d 411, and cases cited; Moorer v. Chastang, 247 Ala. 676, 26 So.2d 75; Belcher v. McGinty, 251 Ala. 342, 37 So.2d 430.

■ The primary requisites to entitle one to relief under § 296, Title 51, are (1) possession of the land by the complainant within the meaning of the statute; (2) membership by the complainant in a class of those allowed under the statute to redeem; (3) a claim to the land by the respondent under a tax title or proceeding; (4) no suit pending to enforce or test respondent's claim. Moorer v. Chastang, supra.

It is without dispute that respondent claims under a tax deed and that no suit was pending to enforce or test her claim under such deed at the time this proceeding was instituted.

■ The complainant, although not the owner of the land at the time of the tax sale, is within the class allowed to redeem under said section, having acquired the interest of Mrs. Granade, who was the owner of the land at time of tax sale. National Fireproofing Corp. v. Hagler, 226 Ala. 104, 145 So. 421, and cases cited.

■ In Bell v. Propst, 220 Ala. 641, 127 So. 212, it was said that in such a proceeding the complainant must have such possession as will require some nature of suit by the purchaser at tax sale to recover it of him; but that it need not be such peaceable possession as will justify a statutory bill to quiet title. A scrambling possession is sufficient. Chesnutt v. Morris, 223 Ala. 46, 135 So. 344. In National Fireproofing Corp. v. Hagler, supra, it was observed that constructive possession is suffi-

cient. See Tensaw Land & Timber Co. v. Rivers, supra.

█ The evidence as to the possession of the property subsequent to the date on which Mrs. Dempsey's rights expired under the timber deed is in sharp conflict, but we think that under the evidence the trial court, who saw and heard the witness, was fully justified in finding that at the time this suit was instituted the complainant, Singley, had that type of possession sufficient to invoke the provisions of § 296, Title 51, Code 1940.

Since the complainant was entitled to proceed under § 296, Title 51, supra, and his rights thereunder were not barred by § 295, Title 51, supra, we hold that the trial court correctly decreed that complainant was entitled to redeem.

We come now to consider appellant's contention that the trial court erred in requiring him, as a condition to redemption, to refund to appellee all taxes which she had paid on the property, that is, taxes on the land and timber.

Section 296, Title 51, supra, under which appellant elected to proceed, although the tax deed was void, as will be shown hereinafter, requires that the redemptioner not only pay to the purchaser at tax sale the amount paid at tax sale, with interest, but the amount of taxes subsequently paid by the purchaser, with interest.

It is clear that appellant, in order to redeem, must pay the full amount paid by appellee at the tax sale, inasmuch as that sale covered the tax year 1933–34. Such taxes became due on October 1, 1934, prior to the time the title to the timber passed to appellee under the timber deed. Appellant must also pay to Mrs. Dempsey the amount of money which she has subsequently paid on the land as distinguished from the timber.

█ Although appellant, complainant, did not proceed on the theory that the tax sale was void, it affirmatively appears from the answer of respondent, appellee, that it was void. A copy of the tax proceedings was made an exhibit to the answer and a part thereof. It appears from such exhibit that the assessment under which the property was sold was made to another than Mrs. Ollie S. Granade, who was the owner. The sale under such an assessment did not pass Mrs. Granade's title. Lewis v. Burch, 215 Ala. 20, 108 So. 854; Singleton v. Doe ex dem. Smith, 184 Ala. 199, 63 So. 949; Crook v. Anniston City Land Co., 93 Ala. 4, 9 So. 425.

█ The sale being void, and Mrs. Dempsey not having been in such possession as to invoke the provisions of § 295 Title 51, Code 1940, all that she acquired thereunder was a right to be reimbursed by one who has a right to redeem from the sale for such amounts as the law allows. Harrell v. Vieg et al., 246 Ala. 669, 22 So. 2d 94.

But appellee, Mrs. Dempsey, was the owner of the timber on the land from November 30, 1934, until November 30, 1940. The timber should have been assessed separately from the land. § 47, Title 51, Code 1940. But irrespective of how the assessment was made, any taxes paid by Mrs. Dempsey on the value of the timber for the period covered by the timber lease was paid on her own property and the appellant, Singley, who stands in the place of Mrs. Granade, should not be compelled to reimburse Mrs. Dempsey for such payments as a condition to redemption.

█ However, on November 30, 1940, the title to the timber which had not been cut reverted to the grantor in the timber deed, Mrs. Granade, since the tax deed was void. § 49, Title 47, Code 1940. Consequently, taxes paid by Mrs. Dempsey on the timber since that time have been to the benefit of appellant, Singley, and he must pay such amount to Mrs. Dempsey as a condition to redemption.

During the tax year 1934–35 Mrs. Granade owned the timber from October 1, 1934, to November 30, 1934; hence Singley should pay to Mrs. Dempsey one sixth of the amount of tax paid by her on the timber on October 1, 1935. Likewise, during the tax year 1940–41, Mrs. Granade owned the timber from November 30, 1940, to October 1, 1941, and Singley should pay to Mrs. Dempsey five sixths of the amount of the tax paid by her on the timber on October 1, 1941. Under the peculiar facts of

686

this case, we think this procedure should be followed, irrespective of the time when the tax liens were fixed, although the net result might be the same.

The interest on the amount paid by Mrs. Dempsey at the tax sale is to be computed according to the rate fixed by the statute in effect at the date of the assessment and sale. The interest on subsequently accruing taxes which must be refunded by redemptioner is to be computed at the rate that obtains by the statute at the time of accrual and payment by tax purchaser and to the time the redemption is effectuated. Morris v. Card, 223 Ala. 254, 135 So. 340.

We are of the opinion that the trial court erred in extending the time for removing the timber. Mrs. Dempsey was not prevented from cutting the timber by any act on the part of Mrs. Granade or the appellant, Singley, as was the situation in the case of Stacey v. Stacey, 250 Ala. 187, 33 So.2d 898. In the absence of some interference or actual misrepresentation on the part of the grantor, a court of equity is without power to alter the terms of a timber deed such as is here involved, by extending the time for removing the timber. § 49, Title 47, Code 1940; Houlton et al. v. Molton et al., 244 Ala. 88, 11 So.2d 850.

We approve the decree in so far as it allows Singley to redeem and to that extent the decree is affirmed. However, we cannot approve of that part of the decree giving to Mrs. Dempsey, appellee, the right to cut and remove timber. To that extent the decree of the trial court is modified.

We are of the opinion that the trial court erred as to the amount which Singley must pay to Mrs. Dempsey in order to redeem, and the decree is in that respect reversed, and the cause is remanded for determination of the amount to be paid by Singley, the redemptioner, which amount is to be calculated in accordance with this opinion.

Affirmed in part, and in part reversed and remanded, with directions to the circuit court.

BROWN, FOSTER, and SIMPSON, JJ., concur.