80 So.2d 239

C. E. QUINN et al.

v.

George W. HANNON.

7 Div. 148.

Supreme Court of Alabama.

March 24, 1955.

Rehearing Denied May 26, 1955.

C. E. Quinn and Phil Joiner, pro se.

Earl McBee, Birmingham, and Embry & Embry, Pell City, for appellee.

GOODWYN, Justice.

Appellants, complainants and cross-respondents below, filed a bill in equity against appellee, respondent and cross-complainant below, seeking to quiet title to an eighty acre tract of "wild land" located in St. Clair County. The bill avers that "complainants are the owners" of said land and "are in quiet and peaceable possession of same"; that "respondent is reputed to claim some right, title, interest, lien, claim or encumbrance in, upon or to the said real estate"; and that "no suit is pending to test the validity of the respondent's said claim." The respondent is called upon "to set forth his claim" to the land "and by what instrument it is derived."

The prayer is for a decree adjudging that respondent "has no right, title, interest, lien or encumbrance in, to or upon said land."

Respondent filed an answer to the bill, making the answer a cross-bill, in which it is denied that complainants "are in the quiet, peaceable possession" of the land and averring that "complainants have never been in the actual or constructive possession of said real estate." It is further averred that respondent "holds title" to said land "under and by virtue of a conveyance from H. H. Montgomery, Superintendent of Banks of Alabama, liquidating Leeds State Bank, under date of September 9, 1931, which deed is of record in the office of the Judge of Probate of said county at Pell City in Deed Volume 20, page 574, and further that the Respondent was placed in possession of said lands at the time of the execution and delivery of said deed as aforesaid, and that he has remained in the actual, peaceable and uninterrupted possession of said lands, exercising actual acts of ownership thereon by going upon and keeping off trespassers regularly and consecutively each year, and by cutting and removing timber from various parts of said lands to the exclusion of all persons."; that complainants claim title and the right to the possession of said lands under and by virtue of a tax deed from the State Land Commissioner dated February 12, 1947, and filed for record in St. Clair County on February 24, 1947; that the tax sale was "erroneously made"; that if respondent is liable for any tax "it would be for one year's taxes and expenses of sale, which respondent offers to pay into Court, and respondent offers to do equity and to perform and comply with any order or decree made in said cause." The prayer of the cross-bill is for a decree "(a) setting aside, canceling and annulling the purported tax sale of said lands, (b) divesting out of the complainants any right, title, interest or claim in and to said real estate and removing the same as a cloud upon the title of respondent and vesting into respondent all right, title and interest in said real estate." The manifest purpose of the cross-bill is to redeem from an alleged void tax sale.

In stating the case, we have passed over pleadings and rulings thereon which are not involved on this appeal.

It appears to be uncontroverted that the land was offered for sale by the tax collector of St. Clair County on June 3, 1932, pursuant to a May 2, 1932, decree of the Probate Court of said county ordering a sale of the land "for the payment of state and county taxes then due from Leeds State Bank the owner of said lands"; that, there being no bidder at said offering for sale, the land was bid in for the state for $10.56, "the sum of said taxes, fees, costs, and expenses"; that the 1932 tax sale was for unpaid taxes which became due on October 1, 1931; that complainants paid $160 to the state for the tax deed to them; that respondent paid $200 for the deed to him from the State Superintendent of Banks, and that said deed was filed for record in St. Clair County on December 1, 1931; that for the tax years 1932 through 1943 said land was assessed by "Hannon & Simpson", the respondent and his partner, and the taxes thereon paid by them; that in August, 1943, respondent acquired his said partner's interest in said land, and for the tax years thereafter the land was assessed by respondent and the taxes thereon paid by him; that the Leeds State Bank was placed in liquidation on July 8, 1929, and its assets and property taken over at that time by the State Superintendent of Banks.

The final decree, here appealed from, denied relief to complainants and granted the relief sought by the cross-bill upon payment by cross-complainant to the register of the court, for payment over to cross-respondents, of the sum of $10.56, "the amount of the State's lien for one year's taxes."

■ It is earnestly insisted by appellee that the case should be affirmed because appellants' brief does not meet the requirements of Supreme Court Rules 1 and 10, Code 1940, Tit. 7 Appendix. While we might, with justification, order an affirmance for insufficient compliance with these rules, we are inclined to exercise our discretion in the matter and give considera-

tion to appellants' brief. Schmale v. Bolte, 255 Ala. 115, 117, 50 So.2d 262; Simmons v. Cochran, 252 Ala. 461, 463, 41 So.2d 579; Guy v. Lancaster, 250 Ala. 287, 290, 34 So.2d 499; Brothers v. Brothers, 208 Ala. 258, 259, 94 So. 175.

■ Cross-respondents seem to take the position that cross-complainant is barred from any rights by what is commonly referred to as the "short statute of limitation" of three years, Code 1940, Tit. 51, § 295, which provides that "no action for the recovery of real estate sold for the payment of taxes shall lie unless the same is brought within three years from the date when the purchaser became entitled to demand a deed therefor; * * *." In discussing this section in Singley v. Dempsey, 252 Ala. 677, 681, 42 So.2d 609, 612, we had this to say:

"Section 295, Title 51, supra, applies to proceedings in equity as well as in ejectment cases; it applies to void tax sales as well as to valid sales; it applies when the land is purchased from the State as well as in instances where the purchase is made from the tax collector. Odom v. Averett, 248 Ala. 289, 27 So.2d 479.

\* \* \* \* \* \*

"* * * the date on which the purchaser is entitled to demand a deed is not alone determinative of the time when the statute begins to run. It cannot begin to run before that time, but it does not necessarily begin to run on that date unless the purchaser is then in actual adverse possession of the property. The rule is stated in Loper v. E. W. Gates Lumber Co., 210 Ala. 512, 98 So. 722, 723, as follows: 'The statute of limitations does not begin to run in favor of the purchaser at a tax sale until the purchaser is in actual adverse possession of the land, and until the day "when the purchaser became entitled to demand a deed therefor." ' Odom v. Averett, supra; Lathem v. Lee, 249 Ala. 532, 32 So.2d 211."

■ We have carefully examined the evidence, reduced to writing by agreement of the parties and presented to the trial court without an oral hearing, and we are clear to the conclusion that cross-respondents were not in the actual adverse possession of the land as required. At most, they had only a scrambling possession which is not sufficient to bring in operation the bar of the "short statute of limitation". Although cross-respondents assessed the property and paid taxes thereon after purchasing it from the state, the cross-complainant also assessed the property and paid taxes thereon for each year, except 1931, after receiving his deed. There is evidence that both parties had the land surveyed and posted "No Trespassing" signs. And there is evidence that cross-complainant twice sold timber off the land. It appears that cross-respondents went on the land several times but we do not find anything in the evidence justifying a conclusion that they were in the actual adverse possession of it. Cross-complainant was not barred by Section 295, supra, from making redemption.

■ It seems to be established that the 1931 tax assessment, on which the tax deed is based, was an invalid assessment because the property for that year was assessed to Leeds State Bank and not to H. H. Montgomery, as State Superintendent of Banks. The Leeds State Bank was placed in liquidation on July 8, 1929, and its affairs at that time were taken charge of by the Superintendent of Banks. The said Superintendent, in discharging his duty of liquidating the Bank, was acting in the capacity of "a statutory receiver and trustee of the assets" of the Bank, Wood v. Williams, 238 Ala. 580, 582, 192 So. 421; Ex parte Tennessee Valley Bank, 231 Ala. 545, 552, 166 So. 1. Accordingly, the land should have been assessed to him for the 1931 tax year, that is, for the taxes which became due on October 1, 1931, Code 1940, Tit. 51, §§ 48, 50; this, for the obvious reason that the assessment for that year could not have been made until October 1, 1930. Act No. 328, appvd. Sept. 15, 1919, Sect. 42, Gen.Acts Ala. 1919, p. 298; Code 1940, Tit. 51, § 37. Whatever interest the

634

Bank had in the land was transferred to the Superintendent of Banks when the Bank was placed in liquidation on July 8, 1929. During the assessment period for the 1931 taxes the Bank had no assessable interest in the land. Therefore, the assessment to the Bank for that year was invalid. Singley v. Dempsey, 252 Ala. 677, 685, 42 So.2d 609, supra.

██ A person who acquires the state's interest in realty following an invalid tax sale to the state, has only "a lien on the property as security for the repayment to him of the amounts specified in sections 283 and 318, Title 51, Code" 1940 [§§ 3096 and 3123, Code 1923]. Gunter v. Smith, 257 Ala. 640, 642, 60 So.2d 611, 613. The effect of these sections is to place the purchaser in the shoes of the state, so to speak, giving to the purchaser whatever rights the state might have had if the sale had not been made. If the redemption here were from the state the amount to be paid would be the amount of money for which the lands were sold at the tax sale, with the statutory interest thereon from the date of sale, there being no subsequent taxes due on the land. § 3110, Code 1923; § 304, Tit. 51, Code 1940. It is to be noted that § 3110, Code 1923, supra, which was in effect at the time of the tax sale on June 3, 1932, provided for payment of interest on "the amount of money for which the lands were sold * * * at the rate of fifteen per cent per annum, from the date of sale", while § 304, Tit. 51, Code 1940, supra, which was in effect when the State Land Commissioner sold the land to cross-respondents on February 12, 1947, and is still in effect, provides as follows: "In order to obtain the redemption of land from tax sales, where the same has been *heretofore* or *hereafter* sold to the state, the party desiring to make such redemption shall deposit with the judge of probate of the county in which the land is situated, the amount of money for which the lands were sold, with interest thereon *at the legal rate of interest prevailing at the time said property was sold for taxes, * *.*" [Emphasis supplied.] Does this mean the rate prescribed by the redemption statute or by the statute fixing the lawful rate of interest in Alabama? Our view is that it refers to the lawful rate of interest which, at the time of the tax sale, was 8% per annum. § 8563, Code 1923, Code 1940, Tit. 9, § 60. This has been the administrative interpretation. Rep.Atty.Gen.1936–38, p. 90.

██ It is undisputed that the lien of the state was for $10.56, that being the amount due for the 1931 taxes, including costs and penalties incident thereto. No subsequent taxes were paid by cross-respondents. Accordingly, as assignees of the state's lien, the cross-respondents should be paid, on redemption by cross-complainant, said sum of $10.56 together with interest thereon at 8% per annum from June 3, 1932. The decree will be here modified by adding to said sum of $10.56 the said interest thereon from June 3, 1932, to the date of our decree of modification. As thus modified, the decree appealed from is affirmed.

Decree modified and, as modified, affirmed.

LIVINGSTON, C. J., and SIMPSON and MAYFIELD, JJ., concur.