134 So.2d 181

**M. L. MOORER**

v.

**Blanche H. MACON.**

1 Div. 729.

Supreme Court of Alabama.

Dec. 22, 1960.

Rehearing Denied Nov. 2, 1961.

Caffey, Gallalee & Caffey, Mobile, for appellant.

Mylan R. Engel, Mobile, for appellee.

COLEMAN, Justice.

From a final decree for respondent in a statutory suit to quiet title, the complainant takes this appeal.

Complainant filed his bill to quiet title to a lot in the town of Citronelle. There are several pecan trees, but no building, on the lot. The bill alleges that complainant is in peaceable possession of the lot claiming to own the same in his own right in fee simple and calls upon respondent to specify her title. Respondent denied complainant's peaceable possession under claim of ownership, alleged that respondent has been in actual possession through a tenant from October 1, 1944, until the time of filing the answer, and further alleged that complainant forcibly took possession while respondent was in actual possession. Respondent further answered that she claims title through a chain of conveyances commencing with a patent from the United States. Respondent makes her answer a cross-bill and alleges that complainant (cross-respondent) is reputed to claim the lot under a tax deed allegedly void, and calls upon the complainant to specify his title.

Complainant answered the cross-bill and alleged that he claims under a tax deed from the State of Alabama and three years of actual adverse possession under said tax deed, and also by virtue of the exclusive assessment and payment of taxes for more than ten years preceding the filing of his bill of complaint.

Complainant offered in evidence a deed from the State Land Commissioner, dated April 5, 1944, and recorded April 14, 1944, in office of Judge of Probate. The deed recites that on April 11, 1921, the Probate Court of Mobile County ordered the lot sold for taxes due from M. C. Skinner, that the lot was, on June 30, 1921, pursuant to said decree, sold to the State, and that for a consideration of $100 the title of the State is conveyed to complainant.

In September or October, 1944, complainant made an agreement with one, Yonge, whereby complainant agreed to furnish posts and wire to be used by Yonge to fence the lot, whereupon Yonge would be permitted to use the lot to pasture horses and cows. Yonge owned and occupied another lot which adjoins the north side of the lot in dispute. The fence was erected by Yonge on three sides of the disputed lot, which was thereby taken into Yonge's pasture lot. He paid no rent to complainant. Yonge remained in possession for at least three and possibly six years. Complainant contends that Yonge remained in possession until complainant took possession in 1955 or thereabouts.

Complainant assessed the disputed lot for taxation and paid the taxes thereon continuously for more than ten years after he received the deed from the State. Respondent had not assessed the lot for taxation or paid any taxes thereon for more than thirty years.

As we understand the contentions of the parties, it is not disputed that respondent holds the record title by inheritance from her mother who died intestate in 1923. It is also conceded that the tax sale mentioned in the deed to complainant was void because the land was sold under an assessment to M. C. Skinner whereas the lot was then owned by Chloe A. Skinner, mother of respondent.

Respondent had not, in her own person, done any act of possession on the disputed lot in many years. All acts of possession, or tending to show possession, on her part were done by and through her husband, A. W. Macon.

Complainant's evidence tended to show that he had gone on the lot many times and had there gathered pecans each year since 1944; that immediately upon surrender of possession by Yonge in 1955, complainant had erected a fence cross the north side of the lot and so enclosed it on four sides; that he placed a horse in the enclosure; that some unidentified person had broken the fence and let the horse out, but complainant had immediately repaired the fence and replaced the horse on the lot; and that

complainant had no knowledge that Yonge had ever questioned complainant's ownership of the lot or made any agreement with respondent, or her husband, which recognized respondent's title.

The evidence for respondent tended to show that a few days after Yonge began to occupy the lot in 1944, A. W. Macon, respondent's husband, had inquired of Yonge by what authority he occupied the lot, and that after some discussion Yonge had agreed to continue to occupy by permission of Macon and that Yonge agreed to pay and did pay rent to Macon every year of Yonge's occupancy. The amount of the rent paid does not appear. A. W. Macon further testified that he informed complainant of the fact that Yonge was paying rent to respondent, but complainant denied that Macon had so informed complainant. Yonge testified that he had never informed complainant of the agreement between Yonge and Macon.

Evidence for respondent tended to show that Yonge ceased to occupy or pay rent for the lot after six years, and that the lot remained unoccupied thereafter until after the discovery of oil about 1955, when complainant fenced the lot and put his horse on it; that complainant never went on the lot and never gathered pecans there; that A. W. Macon had gathered pecans on the lot regularly every year for ten years or more next preceding the commencement of the instant suit.

Evidence was heard ore tenus. The trial court decreed that complainant is not entitled to relief and that he has no title to the lot.

### Three-Year Statute.

Complainant contends that the evidence shows without dispute that Yonge entered as complainant's tenant, that the possession of Yonge continued for three years or more, that the possession of Yonge was the possession of complainant, and because such possession continued for three years it ripened into title in complainant and that by

§ 295, Title 51, Code 1940, respondent is now barred from asserting her title. Said § 295 provides that no action for the recovery of real estate "sold for the payment of taxes" shall lie unless brought within three years from the date the purchaser became entitled to demand a deed therefor, subject to certain exceptions which do not concern this case.

Complainant argues that because Yonge entered into possession of the lot as the tenant of complainant and never surrendered possession, Yonge could not by his alleged agreement with Macon, attorn to respondent and become her tenant, because of the rule that a tenant in possession cannot dispute his landlord's title or attorn to another claimant. Section 1, Title 31, Code 1940; Elliott v. Dycke, 78 Ala. 150; Caldwell v. Smith, 77 Ala. 157; Doe ex dem. Hooper v. Clayton, 81 Ala. 391, 2 So. 24; Carson v. Rains, 237 Ala. 534, 187 So. 707.

■ Respondent insists that the rule does not apply where the first landlord has notice of the attornment to the second landlord; and, because Macon, husband of respondent, told complainant that Yonge was paying rent to respondent, complainant had notice of the attornment and the rule relied on by complainant does not apply in this case. Respondent further argues that complainant cannot have the benefit of the three-year statute, § 295, Title 51, Code 1940, because complainant did not prove that the lot had been sold for the payment of taxes. We are of opinion that the evidence fails to show that the lot was so sold, and that on account of this failure of proof complainant failed to establish his title under § 295, Title 51.

■ Section 295, Title 51, applies when a party comes into equity to quiet title and has application where the land is purchased from the State as well as where it is purchased from the tax collector, and although the tax deed be invalid, it gives color of title and possession held under it is adverse.

Odom v. Averett, 248 Ala. 289, 27 So.2d 479.

■ Complainant states in brief that it is without dispute that the lot was sold for payment of taxes in 1921 and refers to the pages of the record where the deed from the Land Commissioner to complainant is set out. It is true that this deed does recite that the land was sold for the payment of taxes and bid in by the State, but the recitals of a deed are not evidence of historical facts therein recited unless made so by statute. Section 277, Title 51, Code 1940, makes the deed executed by the judge of probate in his official capacity prima facie evidence of the regularity of all proceedings recited therein both prior and subsquent to the decree of sale, but that statute does not apply to a deed by the State Land Commissioner and such a deed is not evidence of the historical facts therein recited; Lathem v. Lee, 249 Ala. 532, 32 So. 2d 211; Bell v. Williams, 256 Ala. 298, 54 So.2d 582. Proof of the sale, therefore, is not supplied by the deed to complainant.

■ A party claiming the benefit of § 295, Title 51, has the burden of proving that the land has been sold for the payment of taxes. Reddick v. Long, 124 Ala. 260, 27 So. 402, was a suit in equity to quiet title. The contest was between Long and Jones. Long claimed under a sheriff's deed which this court held void. Jones claimed, among other things, that he had acquired title by three years' adverse possession under a conveyance made to him by one Cohran, who had purchased at a tax sale. This court held, however, that the deed from the probate judge to Cohran was not acknowledged as provided by statute, and "is not evidence even of the facts which are recited." The court said:

"* * * The defendant Jones has wholly failed to show either that a tax sale was made, or that his vendor, Cohran ever received, or was entitled to receive, a deed to the land, and therefore is not aided by section 606 of the Code of 1886, which limited actions for recovery of land sold for taxes to three years. * * *" 124 Ala. .260, 265, 27 So. 402, 404.

Although the decision in the case was in favor of Jones because neither party had the true title and Jones had shown the older possession, the holding is that Jones could not succeed under the three-year statute. Section 606, Code 1886, is, in all respects here material, the same as § 295, Title 51, Code 1940.

Doe ex dem. Trotter v. Moog, 150 Ala. 460, 43 So. 710, was a common-law action of ejectment wherein the defendant, Moog, claimed the benefit of the three-year statute, § 4089, Code 1896 (§ 606, Code 1886), by virtue of a deed from the auditor conveying land bought by the State at tax sale. This court held that under the provisions of the Act of February 9, 1895, Acts 1894–95, page 488, the purchaser from the State could not have the benefit of the three-year statute. The opinion further states:

"* * * It may be said, also, that neither the act of 1895 nor the Code of 1896 gives to the deed of the auditor the same probative force as a deed made by the probate judge on a regular tax sale, so that the admission of the deed as color of title did not establish prima facie the fact of a sale of the property for taxes. * * *" 150 Ala. 460, 464, 43 So. 710, 711.

Because of failure to prove that the lot had been sold for the payment of taxes complainant cannot succeed under § 295, Title 51.

Section 1123, Title 7, Code 1940, as amended by 1951 Acts, page 1524.

■ Complainant also contends that he has acquired the superior title under § 1123, Title 7, by exclusive payment of taxes for ten years under the color of title afforded by his deed from the State. We are of opinion that this contention is without merit.

Section 1123, as amended, in the part here pertinent, recites as follows:

"'* * * Against all persons who have neither paid any taxes upon said lands nor had any possession thereof, * * * during the ten years next preceding the filing of the bill of complaint, * * * proof of color of title to said lands in complainant, * * * and payment of taxes during said ten year period by complainant, * * * or proof of exclusive payment of taxes by complainant, * * * during said ten-year period, shall be conclusive evidence of title to said lands in complainant.'"

The statute purports to make proof of color of title and payment of taxes for ten years, or exclusive payment of taxes for ten years, conclusive evidence of title against all persons who have not paid any taxes on nor had any possession of the lands in controversy during the ten-year period. The evidence is clear that respondent has not paid any taxes on the lot in controversy during the ten-year period next preceding the filing of the bill of complaint and is also clear that complainant exclusively has paid taxes during said ten years. The question remains whether the evidence is sufficient to support a finding that respondent had "any possession" during said ten years.

If Yonge's occupancy be considered the occupancy of complainant, we cannot say that respondent had "any possession" during Yonge's occupancy. From Yonge's testimony that he paid rent to respondent three or four years as long as he used the lot, and further that he surrendered possession after five or six years, however, the trial court could find that Yonge ceased to occupy the lot after 1950. The question then is, did respondent, from 1950 until this suit was commenced in 1955, have through her husband, "any possession," as those words are used in the statute?

"Any possession" is not defined in the statute nor have we found any source from which a definition can be determined other than ordinary usage and meaning. The statute does not say "any possession' must be adverse, or hostile, or open, or exclusive, or peaceable.

"That the term possession has many shades of meaning and that it is capable of no exact definition is beyond doubt. Mr. Justice Lamar in National Safe Deposit Co. v. Stead, 232 U.S. 58, 34 S.Ct. 209, 212, 58 L.Ed. 504, well said: '* * * there is no word more ambiguous in its meaning than possession. * * *.'" Boyd v. Travelers Fire Insurance Company, 147 Neb. 237, 241, 22 N.W.2d 700, 702.

"In Simpson v. Blount, 3 Dev., 34 [14 N.C. 34], Ruffin, J., declares that 'exercising that dominion over the thing, and taking that use and profit which it is capable of yielding *in its present state* (the italics are his own), is a possession.'

"Of similar import is the definition given by Gaston, J., in Williams v. Buchanan, 1 Ired., 535 [23 N.C. 535], when he says that 'possession is denoted by the exercise of acts of dominion over it (the property) in making the ordinary use, and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated, as to show that they are done in the character of owner, and not of an occasional trespasser.' * * * *" Staton v. Mullis, 92 N.C. 623, 632.

In considering a claim of title to land through adverse possession under color of title, this court said:

"* * * The elements of such a title are (1) such possession as the land reasonably admits of; * * *. To the constitution of the first element,—such possession as the land reasonably admits of,—it is not necessary that land which is uninclosed and uncultivated should be inclosed and cultivated merely because it was capable of inclosure and cultivation. The possession is

gauged by the actual state of the land, and not with reference to its capability of being changed into another state which would reasonably admit of a different character of possession. Openness and notoriety and exclusiveness of possession are shown by such acts in respect of the land in its condition at the time as comport with ownership,— such acts as would ordinarily be performed by the true owner in appropriating the land or its avail to his own use and in preventing others from the use of it as far as reasonably practicable; and near akin to these are the acts evidencing the element of hostility toward all the world. * * *." Goodson v. Brothers, 111 Ala. 589, 595, 596, 20 So. 443, 444.

In the case at bar, the evidence supports a finding that the husband of respondent, acting for her, went on the lot regularly during the pecan gathering season and gathered pecans every year from 1950 until this suit was commenced. We are of opinion that these regular, repeated acts of the husband, acting for respondent, done in the character of owner and not of an occasional trespasser, constituted some sort of possession, and that if the chancellor believed the testimony going to show such acts he would be justified in finding that respondent did have "any possession" of the lot in question, within the meaning of the words "any possession" as they are used in § 1123, Title 7, Code 1940, as amended. As against a finding that respondent did have "any possession" during the ten-year period, complainant's color of title and exclusive payment of taxes during that period are not conclusive evidence of his title against respondent under said § 1123.

We are not able to say that the decree appealed from is not supported by the evidence or is palpably wrong or unjust, and are of opinion that the same is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, and GOODWYN, JJ., concur.

On Rehearing.

COLEMAN, Justice.

Complainant argues two propositions which are concisely stated in the following extract from his brief:

"* * * We say, therefore, that under the decisions of this Court since Doe ex dem Evers vs. Matthews, 192 Ala. 181, 187-8 [68 So. 182], the sale by the State Land Commissioner as provided by statute, was a sale for the 'payment of taxes' and no other sale had to be shown in order to make the short statute applicable. We say further that if other evidence of a sale for payment of taxes was necessary, such evidence clearly appeared in the record in the testimony of Appellee, Mrs. Macon, and her husband, and was admitted in her Answer and cross-bill."

In the Evers case, supra, the parties stipulated as follows:

"* * * on June 19, 1901, the land was sold by the tax collector, and bought in by the state of Alabama, for an amount equal to the taxes, fees, and costs—*these latter facts being admitted* and limited to the sole purpose *to show that there was a sale of the property to pay the taxes due thereon*, the date of said sale, to enable defendant to claim the statute of limitations of three years and the benefits conferred by section 2308, Code 1907, and as an evidence of the bona fides of the claim of the defendants. Said decree is not offered as a muniment of title, and the regularity or legal sufficiency of said decree and said sale to pass title is not admitted. * * *" (Emphasis supplied.) 192 Ala. 181, 182, 183, 68 So. 182, 183.

The opinion states in pertinent part:

> "This property was sold for taxes due from appellant, the then owner, under a decree of the probate court in the summer of 1901, and bid in by the state. * * *" 192 Ala. 181, 184, 63 So. 182.

The parties in the Evers case stipulated that the sale had been made by the tax collector. One of the limited purposes of the stipulation was to show that such a sale had been made. It appears that the parties did not regard the deed from the auditor, which was also admitted for the same limited purposes, as being sufficient proof that the land had been sold for payment of taxes. We are of opinion that the sale for payment of taxes referred to in Title 51, § 295, is the sale by the tax collector and not a subsequent sale by the Land Commissioner.

We are further of opinion that in the case at bar, the averments of respondent's answer and the testimony of respondent and her husband are not sufficient to admit or prove that the land has been sold for the payment of taxes at a sale through which the complainant claims. The averment is that complainant is "reputed" to claim under an allegedly void deed which resulted from an allegedly void sale, but is not an averment that complainant does in fact so claim.

Neither do we think that respondent's testimony that she supposes, or that of her husband that he did not know in 1921 but knows now, that the land was sold in 1921 suffices to show that complainant claims under such a sale. The testimony does not connect complainant with such a sale, and, as we have already indicated, we do not think the recitals in the deed from the Land Commissioner to complainant are evidence of such connection.

Opinion extended.

Application overruled.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.