This appeal involves the right of former owners of property, which had been purchased by the State of Alabama at a tax sale for the nonpayment of ad valorem taxes, to redeem from the tax purchaser and his assigns.
The case grows out of a "bulk sale" by the State of the subject parcel and 316 other parcels, all located in Mobile County, pursuant to the "bulk sale" policy, which was adopted by the State Department of Revenue in 1982 to dispose of property held by the State for the nonpayment of taxes.
The central question presented is whether the former owners of the property, who are seeking to exercise their statutory right of redemption, must pay to the tax purchaser at the "bulk sale" a sum equal to "all the taxes due upon such lands, or for which they were sold, and the penalties and all of thetaxes that should have been under the law assessed upon thesame, if they had been the property of a private citizen of thestate." Code of 1975, § 40-10-135.
In order to answer that central question, we must consider another question: Does Code of 1975, § 40-10-135, which allows the purchaser from the State to be "treated as an assignee" of all the taxes due on the property, plus the amount that would have accrued while the State held title, contravene Art. IV, § 100, Constitution of Ala. 1901, which generally prohibits the State from granting to a private individual the right to collect a tax?
On April 7, 1980, the Probate Court of Mobile County ordered the sale of the parcel of land involved on this appeal for the payment of taxes, fees, costs, and expenses of the state, county, and city. The land was offered for sale by the tax collector of Mobile County as provided for by law, and, no person having bid a sufficient sum to pay the taxes, fees, costs, and expenses, the land was bought by the State for the sum of the taxes, fees, costs, and expenses. *Page 175 
In 1985, the State conducted a "bulk sale" of 317 parcels, including the subject parcel, in accordance with a policy adopted by the State to conduct county-wide sales of property it held title to for the nonpayment of taxes. In determining the amount of consideration to put into each individual deed, the State simply took the total purchase price of $27,500 and divided it by the total number of parcels, i.e., 317, to arrive at a consideration figure, which was recited in each deed — $86.75. Admittedly, the consideration figure does not represent the sum of the delinquent taxes due or accrued while the State held title, nor does it represent the fair market value of any parcel. On January 3, 1986, the State land commissioner, with the approval of the Governor, executed a deed to Coastal Inter-City Health Services, Inc. ("Coastal"), which granted, bargained, sold, and conveyed all of the State's right and title to the subject parcel. On January 6, 1986, Coastal conveyed by a quit-claim deed all of its right, title, and interest in and to the subject property to Michael D. Langan and Mark A. Haynes, appellants, who subsequently conveyed, by quitclaim deed, a portion of the subject land to M R Properties, Inc.
On September 3, 1986, plaintiffs, Jay P. Altmayer and 18 other individuals, in their personal or representative capacities as the original owners of the subject property, filed suit in the Mobile Circuit Court to quiet title to the property, and they also sought judicial redemption of the property. On March 30, 1987, the trial court, after having considered the pleadings and evidence presented in connection with a motion for summary judgment, summarized the positions of the parties as follows:
 "Plaintiffs contend that they are proceeding under § 40-10-83, Code 1975, and that they are entitled to redemption of the property upon payment to the Defendants of such sums, and the interest thereon, as were paid by Defendants or their predecessors in title for the property and for taxes paid by them subsequent to the purchase. Defendants claim that under § 40-10-135, Code 1975, Plaintiffs must in addition pay to Defendants such sums as would be due to be paid to the Tax Collector during the time the State held title, had taxes been assessed during such time. Neither maintains that the taxes for such period should be paid to the Tax Collector. Under Plaintiffs' theory, Plaintiffs would redeem the property and escape payment of such taxes, absent the ability of the Tax Collector to 'recapture' the taxes. Under defendants theory, such sums would be paid to and retained by Defendants. The Court does not believe that either result is correct."
The trial court then entered the following order:
 "Judicial interpretation of § 40-10-83 has extended its operation somewhat beyond what might be concluded from a reading of the section. William R. Justice, in Redemption of Real Property Following Tax Sales in Alabama, 11 Cum.L.Rev. 331 (1980), says that, 'The text of this statute sits, like a tip of an iceberg, atop a body of case law that transforms the section into an additional and distinct right of redemption.' That case law is summarized by Justice as follows:
 " 'In summation, the Supreme Court of Alabama has evidenced its inclination to support landowners against tax-sale purchasers by creating a method of judicial redemption while purportedly following the wishes of the legislature. An owner who has failed to redeem within three years of a tax sale may still redeem by bringing suit to quiet title despite the statute's requirement that the suit be against the owners, although the strict procedural requirements of bills to quiet title observed outside the realm of taxation are ignored. This is true whether the tax sale is valid or invalid, and is available without a time limit, provided two requirements are met. First, there must be no suit pending to enforce the purchaser's claim, despite a contrary statutory requirement. Second, though not mentioned in the statute, the purchaser must not have cut off *Page 176 
the owner's right by adverse possession.'
 The statute provides that the redemption amount is 'the amount paid by the purchaser at the sale and of the taxes subsequently paid by the purchaser, together with six percent per annum thereon.' However, the construction of § 40-10-83
requires that the redeemer also pay the taxes which would have accrued:
 " 'His right to redeem under section 296, Title 51, Code [now § 40-10-83], assumes that the title passed out of complainant by the tax sale, and he is trying to reestablish it, dependent upon his possession, not necessarily peaceable possession. His right is not affected by his failure to pay the taxes while the title was in the State under the tax sale. If he can redeem at all, it is on the condition that such taxes be paid. * * * ' [Emphasis added.] Standard Contractors Supply Co. v. Scotch, 247 Ala. 517, 25 So.2d 257 (1946).
 "As interpreted, § 40-10-83 requires as a condition of redemption payment not only to the tax purchaser of the amounts paid by him, but also to the State of the amounts not collected by it. Therefore, in a proceeding under this section the subrogation provisions of § 40-10-135 are not applicable.
 "To the extent that § 40-10-135 requires payment of the uncollected taxes to Defendants rather than the State, then such statute, together with § 40-10-134, would appear to run afoul of Art. IV, § 100, Constitution of Ala. 1901, which provides that no obligation or liability to the State shall 'be exchanged or transferred except upon payment of its face value.' However, it is not necessary to reach the constitutional question for the reasons stated above.
 "In the event that in further proceedings it is held that Plaintiffs are not required to pay the uncollected taxes to the State or to Defendants, the Court notes that Plaintiffs seek equitable relief. The Court alternatively finds as an equitable condition to redemption that Plaintiffs pay to the Tax Collector such taxes and all applicable penalties and interest.
 "Summary judgment is granted in favor of Plaintiffs for redemption of the property described in the complaint upon payment to the Tax Collector of all taxes which accrued, or which would have accrued had Plaintiffs retained title, for the tax years 1979 through 1986, together with the interest and penalties thereon, less the amount paid by Defendants' predecessor in title to the State as consideration for the tax deed and any amounts paid by Defendants or their predecessor in title as ad valorem taxes subsequent to the receipt of the tax deed, and further conditioned upon payment to Defendants of all sums paid by Defendants or their predecessor in title to the State as consideration for the tax deed and of all sums paid by Defendants as ad valorem taxes subsequent to receipt of the tax deed, with the interest thereon. Title will be quieted and a final decree entered upon receipt of an affidavit establishing such payments."
Because of the importance of the issues presented, this Court granted oral argument in this case and also allowed the State Department of Revenue to file an amicus brief in the case, in which the Department asserts that, if the order of the trial court is affirmed, "the effect would be to severely curtail or perhaps, even prevent altogether, 'best price' sales of properties held by the state for nonpayment of taxes."
 I.
We believe it would be helpful to an understanding of the legal issues presented in this case to examine the history and procedure applicable to "best price" sales conducted by the State as authorized by Code of 1975, § 40-10-134.
When a tax collector of any county is unable to collect the ad valorem taxes that have been assessed against land located in the county, the probate court is empowered to order the sale of that land for the payment of the taxes assessed. Before a sale *Page 177 
can be made, however, the tax collector must report to the probate court of the county his inability to collect the tax without a sale of it. This requirement is necessary to ensure the validity of the sale. Code of 1975, § 40-10-1; State exrel. Gallion v. Graham, 273 Ala. 634, 143 So.2d 810 (1962);Messer v. City of Birmingham, 243 Ala. 520, 10 So.2d 760
(1942).
The tax collector must give written notice to the taxpayer against whom the unpaid taxes have been assessed, either addressed to the taxpayer or to his personal representative or, if the taxpayer is a nonresident of the county, then by publication in a newspaper in the county. Code of 1975, §40-10-6.
The taxpayer then has the opportunity to appear before the probate court to interpose any valid defense that the taxpayer may have against the sale of the land for the payment of the taxes, but, if none is made, the probate court is empowered to sell the property for the payment of the delinquent taxes. However, before this sale can take place, another notice, this one at least 30 days before the day of the sale, must be given. This notice must be published for three successive weeks in a newspaper in the county, or by posting a notice at the courthouse in which the land is situated. After this notice is published or posted, the sale is made in front of the courthouse of the county at public outcry to the highest bidder for cash. Code of 1975, § 40-10-11 through § 40-10-15.
If there is no purchaser for the land offered for sale at the courthouse steps, then the judge of probate must "bid in" the land on behalf of the State for the sum of the delinquent taxes, fees, charges, costs, and expenses of the sale. Code of 1975, § 40-10-18.
The judge of probate then makes out a certificate of purchase to the State and delivers it to the tax collector of the county. When the accounts of the tax collector have been settled by the comptroller, the comptroller delivers the certificate of purchase to the land commissioner. Lands bid in for the State are not assessed for ad valorem taxes until they have been redeemed or sold by the State, thus the effectof the purchases by the State of lands sold for delinquenttaxes is to withdraw the land from further taxation untilredeemed or sold by the State. Code of 1975, § 40-10-20;Downing v. City of Russellville, 241 Ala. 494, 3 So.2d 34
(1941).
The commissioner of revenue, as ex-officio land commissioner, has supervision and control of all real estate bought by the State at tax sales. He has the authority to rent, lease, and operate the lands generally, and also to sell the land. Pursuant to those duties, the Department of Revenue can "investigate sales of real estate for taxes bid in by the state, notify the parties at interest in such real estate or sales, secure redemption, sales or property, prevent waste," protect against trespassers, and generally look after the lands. Code of 1975, §§ 40-10-50, -52.
In order to prevent erroneous sales of land for taxes, the land commissioner is also charged with the duty of sending to the tax assessor of each county by August 1 of each year a descriptive list of all the lands in the county bid in for the State during the year prior to August 1 and not redeemed. The county tax assessor then must compare this list carefully with the record of sales of land for taxes in the county, and of the redemption thereof, and ascertain whether any of the lands have been redeemed or were not liable for the taxes for which they were sold. If there have been any erroneous sales, or if there have been lands that have been redeemed, the tax assessor then shall certify these facts to the land commissioner and the probate judge must correct the record of land sales in his office accordingly. Code of 1975, § 40-10-54.
When three years have passed from the date of the sale of the lands from the tax collector to the State, the land is subjectto sale by the state land commissioner for a sum sufficient tocover and satisfy all claims of the State and county, which isa sum not less than the amount of money for which the landswere bid in by the State plus the "taxes due on said landssince date of sale." Code of 1975, *Page 178 
§ 40-10-132. If there are lands that have been sold for taxes and bought for the State and not redeemed or sold by the State after a period of five years has elapsed from the date of saleto the State by the tax collector (the case here), then theland commissioner may sell the land for the "best price"obtainable, "irrespective of the amount of taxes due." (Emphasis added.) Code of 1975, § 40-10-134. But, before either type of sale by the land commissioner can be effected, the land commissioner must give written notice to the former owner informing him that an application has been made for the purchase of the land, and must give a reasonable time within which the former owner may redeem the land. Code of 1975, §40-10-133.
Thus, at the time the land commissioner has determined that the land is going to be sold, the former owner of the land has received three notices — two in writing and one by publication — informing him that he has the right to redeem his property.
In its amicus brief, the State contends that the record shows that it has been difficult, if not almost impossible, for the State land commissioner to sell lands under §40-10-132, because, the State argues, "a potential tax purchaser must pay all the taxes that were due on the lands at the time of the sale to the State, and all the taxes that have accrued from the date the land was bid in for the State to the date of sale by the State to the tax title purchaser," and because
 "tax title purchasers are aware of the former owner's right of so-called 'judicial' redemption under § 40-10-83. Because of this section, a § 40-10-132 purchaser [the case here] realizes that he, upon redemption by the former owner, can only require the former owner to reimburse him for what the taxes would have been had the former owner redeemed from the State (the price he has paid to the State), plus interest thereon at the rate of 6% per annum. The 6% interest rate provides an extremely small rate of return for what is sometimes a large, and always risky, investment."
There is evidence in the record that sales pursuant to §40-10-132 have long been a problem for the State, resulting in a large inventory of lands bid in for the State, and that, in 1982, the Department of Revenue sought to address the problem of the extensive land holdings remaining on tax sale status for long periods of time with no production of revenue to the State. The record shows that to provide a solution to this problem, the Department of Revenue adopted a policy whereby lands that had been held by the State for more than five years
would be sold "in bulk," in countywide units through public advertisement for sealed bids, as provided for in § 40-10-134, "for cash at the best price obtainable." The State has the right to accept or refuse the highest bid. Although the mechanics of these "bulk sales" and the emphasis placed on them are different from those of prior years, the actual authority for the procedure, according to the State, "has been a part of the Code of Alabama since 1907. See, Section 2338, Code ofAlabama of 1907, which is present § 40-10-134, Code of Alabama, 1975."
 II.
The arguments of the parties and the State, as amicus, can be summarized, as follows:
The State and the tax purchaser contend that the "bulk sale" policy of the State is authorized by § 40-10-134, that it fosters a state policy of returning tax delinquent property to the tax rolls, that it is designed to discourage tax avoidance, and that it does not run afoul of a parallel state policy that provides a former owner of property a liberal right of redemption. They both argue that § 40-10-135 authorizes the tax purchaser, or his assigns, to require a former owner to pay to him a sum equal to "all the taxes due upon such lands, or that should have been under the law assessed upon the same, if they had been the property of a private citizen of the state," and that the statutory procedure is constitutional.
The former owners contend, on the other hand, that the governing case law provides *Page 179 
that a tax sale purchaser who has not paid to the State a sum at least equal to the taxes that would have accrued against the property had it been privately owned is not entitled to collect those taxes from the former owner upon redemption, and that, if § 40-10-135 is interpreted as urged by the tax purchaser and the State of Alabama, then § 40-10-135 violates Art. IV, § 100, Constitution of Ala. 1901.
Although the former owners believe they have a statutory right to redeem without paying the interim taxes to anyone, they do state that they "have no quarrel" with the trial court's order, which conditioned their right to redeem upon payment to the State of the interim assessed and unassessed taxes. Therefore, the only real issue in this case is whether the State, or the legislature, through § 40-10-135, can constitutionally assign to the "best price" purchasers the amounts the State would have otherwise collected had the property been sold to a private individual at the tax collector's sale (e.g., delinquent taxes, fees, charges, costs, and expenses of the sale, § 40-10-18), in addition to "the penalties and all of the taxes that [the State would have] under the law assessed," but for the necessity of its purchase
of the land at the tax collector's sale. Section 40-10-135.
 III.
By its express terms, § 40-10-135 assigns to the "best price" purchasers not only the taxes and penalties "that should havebeen . . . assessed," but also "all the taxes due upon such lands," and further confers upon the "best price" purchasers "all the rights, liens, powers and remedies . . . [that] an individual purchaser at the tax collector's sale would have" against a redeeming party. These latter rights, etc., include the right to collect the delinquent taxes (i.e, those assessed but unpaid prior to the State's purchase), fees, charges, costs, and expenses of the sale (§ 40-10-18), all of which arereally owed to the State. Clearly, since the "best price" purchasers did not pay to the State the face value of the amounts owed to it by the former owners, the assignment of these amounts, pursuant to § 40-10-135, violates Art. IV, § 100, Constitution of Ala. 1901, which unequivocally states:
 "No obligation or liability of any person, association, or corporation held or owned by this state, or by any county or other municipality thereof, shall ever be remitted, released, or postponed, or in any way diminished, by the legislature; nor shall such liability or obligation be extinguished except by payment thereof; nor shall such liability or obligation be extinguished except by payment thereof; nor shall such liability or obligation be exchanged or transferred except upon payment of its face value. . . ."
Whether the State can now collect from the redemptioners theunassessed taxes for the period between its purchase at the tax sale and the bulk sale more than five years later to the "best price" purchasers under § 40-10-135, is another matter. In the present case, the matter appears to be a nonissue, because the State is not seeking to collect these unassessed taxes. However, if they are at all collectable, they are collectable only by the appropriate taxing authority, not by a private individual, unless that individual is obligated, upon collecting them, to remit the taxes to the taxing authority.
Section 40-10-135 does more than merely provide a method of calculating the price that a former owner must pay to redeem land after it has been bought by the State and then sold for the "best price obtainable," pursuant to § 40-10-134. There is no mention in the statute of a purchase price upon redemption; rather it expressly confers upon the best price purchaser "on failure of his title . . . all such liens and charges as theState had before such sale by the land commissioner." Because this statute is not susceptible to two constructions, we cannot uphold its constitutionality simply because its operation facilitates the return of land to the tax rolls by offering an incentive to "best price" purchasers to make a "risky" investment; that is, because, by its operation, if the property is redeemed by the former owners, the best *Page 180 
price purchasers are guaranteed to net more than a mere 6 percent interest per annum.
While the legislature may enact a statute requiring the former owners to pay to the State the delinquent taxes, etc., upon redemption from a "bulk sale" purchaser, under our constitution the legislature cannot assign the State's right to assess and collect those taxes to one who has not himself paid those taxes to the State.
Accordingly the judgment below is due to be, and it is hereby, affirmed.
AFFIRMED.
ALMON, SHORES, ADAMS and HOUSTON, JJ., concur.
TORBERT, C.J., and MADDOX, JONES and STEAGALL, JJ., dissent.