Freda P. Roberts, the Mobile County revenue commissioner, and M R Properties, Inc. ("M R"), appeal and cross-appeal, respectively, from a judgment quieting title in Better Houses, Inc., to a parcel of real estate situated in Mobile County. We reverse and remand.
On June 8, 1982, a parcel of Mobile County real estate identified as Lot 15, Princeton Woods Subdivision, was offered for sale for nonpayment of the ad valorem taxes that were payable by J.W. Britt Construction Company, Inc. ("Britt"), in 1981. No purchaser appeared at the sale; therefore, the State "bid in" $103.55 — the amount of the delinquent taxes — plus costs and interest. After holding title to the property for approximately 5 1/2 years, the State offered it for sale at the "best price obtainable," pursuant to Ala. Code 1975, § 40-10-134. On December 8, 1987, M R received a tax deed to the property in consideration of $262.40, the purchase price it paid for the lot.
On January 3, 1991, Better Houses, Britt's successor in interest, sued to redeem the property from M R. M R counterclaimed against Better Houses for the amount of all the ad valorem taxes it had been assessed; the amount of taxes, interest, and costs assessed to Britt; plus the amount that would have been payable through 1988 if the lot "had been the property of a private citizen of the state," Ala. Code *Page 434 
1975, § 40-10-135 ("the interim taxes").
The cause was tried on September 24, 1991. Because none of the essential facts was disputed, the dispositive issue before the trial court was the right of M R, as the purchaser of a tax deed, to recover the interim taxes. On October 21, 1991, the trial court entered a judgment ordering M R, upon receipt from Better Houses of a redemption price of $1,733.06 — a figure that included the interim taxes — to convey its title and interest in the property to Better Houses. On October 18, 1991, Roberts intervened, claiming a right to the disputed taxes. Subsequently, Better Houses moved to alter, amend, or vacate the judgment.
On January 22, 1992, the trial court vacated the October 21 judgment and entered a judgment reducing the redemption price imposed on Better Houses to approximately $600 ($262.40 [the amount M R paid for the tax deed], plus $264.11 [the ad valorem taxes assessed against the property while title was held by M R], plus 12% interest). Citing Langan v.Altmayer, 539 So.2d 173 (Ala. 1988), it concluded that because M R had "paid to the State of Alabama for the property an amount less than the face value of the amounts owed to it," M R was prohibited by Ala. Const. 1901, § 100, from collecting the interim taxes. The trial court further concluded that the revenue commissioner did not have the "legal authority to collect" the taxes payable through 1988, thus holding, in effect, that the amount of the interim taxes, plus penalties and interest, was uncollectable in toto.
Roberts and M R appealed and cross-appealed, respectively, each claiming a right to the interim taxes, and the State of Alabama Department of Revenue filed an amicus brief.[1] M 
R contends, in effect, that the interim taxes do not represent an "obligation" within the definition of that term in § 100 as interpreted in Langan v. Altmayer, and that the denial of its right to the interim taxes, based on the retroactive application of the rule announced inLangan, impairs a vested contractual right and thus violates various state and federal constitutional guarantees. These contentions require a limited revisit of an issue addressed in Langan four years ago, that is, the compatibility of § 40-10-135 with § 100 of the Constitution of Alabama.
Ala. Const. 1901, § 100, provides:
 "No obligation or liability of any person, association, or corporation held or owned by this state, or by any county or other municipality thereof, shall ever be remitted, released, or postponed, or in any way diminished, by the legislature; nor shall such liability or obligation be extinguished except by payment thereof; nor shall such liability or obligation be exchanged or transferred except upon payment of its face value; provided, that this section shall not prevent the legislature from providing by general law for the compromise of doubtful claims."
(Emphasis added.) In Union Bank Trust Co. v. Phelps,228 Ala. 236, 238, 153 So. 644, 646 (1934), this Court held that "taxes accrued to the state are an obligation or liability of the taxpayer, within the meaning and purview of section 100 of the Constitution of Alabama, and, as such, cannot be remitted, released, or . . . extinguished except by payment." This case thus involves the application of § 100 to a significant portion of the tax and redemption statutory scheme, the pertinent sections of which are set forth below:
 "[§ 40-10-1] The probate court of each county is empowered to order the sale of lands therein for the payment of taxes assessed on such lands, or against the owners thereof, when the tax collector shall report to the court that he was unable to collect the taxes assessed against such land, or any mineral, timber or water right or special right, or easement therein, or the owner thereof, without a sale of such land."
 "[§ 40-10-18] If no person shall bid for any real estate offered at such sale *Page 435 
an amount sufficient to pay the sum specified in the decree of sale, and the costs and expenses subsequently accruing, the judge of probate shall bid in such real estate for the state at a price not exceeding the sum specified in such decree and such subsequently accruing cost and expenses. In no event shall the judge of probate bid in for the state less than the entire amount of real estate included in any assessment."
 "[§ 40-10-132]. It shall be the duty of the land commissioner to cause to be prepared a suitable book, in which shall be entered a description, as accurate as can be obtained, of all the lands which have been bid in by the state, with the amount of state and county taxes due thereon and the date when such lands were bid in; and, when three years shall have elapsed from the date of sale, such portions of lands as have not been redeemed shall be subject to sale by the state; and the land commissioner with the approval of the governor, may sell the same at private sale to any purchaser, who may pay therefor in cash to the treasurer such sum of money as the land commissioner may ascertain to be sufficient to cover and satisfy all claims of the state and county, which sum shall not be less than the amount of money for which the lands were bid in by the state, with interest thereon at the rate of six percent per annum from the date of sale, together with the amount of all taxes due on said lands since date of sale, with interest thereon at the rate of six percent per annum from the maturity of such taxes; provided, that if lands have not been redeemed or sold by the state within five years from the date of sale, such lands may be sold by the land commissioner as hereinafter provided."
 "[§ 40-10-134]. When lands have been sold for taxes and bought in for the state of Alabama and have not been redeemed or sold by the state and a period of five years has elapsed from the date of sale to the state, the land commissioner, with the approval of the governor, may sell the same at private sale to any purchaser for cash at the best price obtainable, irrespective of the amount of taxes due, after giving notice as provided for in section 40-10-133."
 "[§ 40-10-135]. When lands have been sold by the state, as provided in sections 40-10-132 and 40-10-134, and the purchase money has been paid, the land commissioner, in behalf of the state, shall execute to the purchaser a deed, duly acknowledged, without warranty or covenant of any kind on the part of the state, express or implied, conveying to him all the right, title and interest of the state in and to the lands purchased by him; and such purchaser shall thereafter have all the right, title and interest of the state in and to such lands and shall be held and treated as the assignee of all the taxes due upon such lands, or for which they were sold, and the penalties and all of the taxes that should have been under the law assessed upon the same, if they had been the property of a private citizen of the state, and he shall be clothed will all the rights, liens, powers and remedies, whether as a plaintiff or defendant, respecting said lands as an individual purchaser at the tax collector's sale would have in similar circumstances; and all such liens and charges as the state had before such sale by the land commissioner shall be enforced in favor of such purchaser from him, as under the provisions of law relating to individual purchasers at sales by the tax collector, such purchaser, on failure of his title, shall have his lien and charges assessed by the court or by a jury and may foreclose the same by proceeding at law in such suit."
 "[§ 40-10-120]. Real estate which hereafter may be sold for taxes and purchased by the state may be redeemed at any time before the title passes out of *Page 436 
the state or, if purchased by any other purchaser, may be redeemed at any time within three years from the date of the sale by the owner, his heirs or personal representatives, or by any mortgagee or purchaser of such lands. . . ."
 "[§ 40-10-121(a)]. In order to obtain the redemption of land from tax sales where the same has been heretofore or hereafter sold to the state, the party desiring to make such redemption shall apply therefor as hereinafter provided and shall deposit with the judge of probate of the county in which the land is situated the amount of money for which the lands were sold, with interest thereon at the legal rate of interest prevailing at the time said property was sold for taxes, together with the amount of all taxes found to be due on such land since the date of sale, as provided herein, with interest at the legal rate of interest prevailing from maturity of such taxes and all costs and fees due to officers."
 "[§ 40-10-83]. When the action [to recover possession of lands sold for taxes] is against the person against whom the taxes were assessed or the owner of the land at the time of the sale, his heir, devisee, vendee or mortgagee, the court shall, on motion of the defendant made at any time before the trial of the action, ascertain the amount paid by the purchaser at the sale and of the taxes subsequently paid by the purchaser, together with six percent per annum thereon, and a reasonable attorney's fee for the plaintiff's attorney for bringing the action, and shall enter judgment for the amount so ascertained in favor of the plaintiff against the defendant, and the judgment shall be a lien on the land sued for. Upon the payment into court of the amount of the judgment and costs, the court shall enter judgment for the defendant for the land, and all title and interest in the land shall by such judgment be divested out of the owner of the tax deed."
(Emphasis added.)
 I. The Rule of Langan v. Altmayer Langan v. Altmayer, 539 So.2d 173 (Ala. 1988), involved land that had been sold for the nonpayment of taxes, bought in by the State, held for five years, and then resold for the "best price obtainable," pursuant to §§ 40-10-134
and 40-10-135. 539 So.2d at 174-75. When a group of redemptioners sought to quiet title to the property, the tax deed purchasers contended that the plaintiffs' rights of redemption were conditioned upon payment to the tax purchasers of (1) "such sums, and the interest thereon, as were paid by [the tax purchasers] or their predecessors in title for the property and for taxes paid by them subsequent to the purchase," plus (2) "such sums as would be due to be paid to the Tax Collector during the time the State held title, had taxes been assessed during such time," that is, the interim taxes. Id. at 175. The trial court entered a summary judgment in favor of the redemptioners, conditioned on payment to the defendants of the former amount and payment to the State of the latter amount. Id. at 175.
Affirming the trial court's judgment, this Court posited the following two issues: (1) "[W]hether the . . . legislature, through § 40-10-135, [could] constitutionally assign to the 'best price' purchasers the amounts the State would have otherwise collected had the property been sold to a private individual at the tax collector's sale (e.g., delinquent taxes, fees, charges, costs, and expenses of the sale, § 40-10-18)"; and (2) whether the legislature could, through that section, "constitutionally assign to the 'best price' purchasers" the right to collect " 'the penalties and all of the taxes that [the State would have] under the law assessed,' but for the necessity of its purchase of the land at the tax collector's sale," that is, the interim taxes. Id. at 179 (emphasis in original.) We answered both questions in the negative.
Regarding the first issue, we held that the "delinquent taxes (i.e., those assessed but unpaid prior to the State's purchase), *Page 437 
fees, charges, costs, and expenses of the sale (§40-10-18)" constituted an "obligation" as that term is used in § 100. Langan, 539 So.2d at 179. It was undisputed that the amount bid in by the State pursuant to §40-10-18 exceeded the amount paid to the State by the defendants pursuant to § 40-10-134. We held, therefore, that the purported assignment to the defendants of the State's claim to the delinquent taxes pursuant to § 40-10-135
violated, by definition, § 100 of the Alabama Constitution.Langan, 539 So.2d at 179.
M R contends that Langan is "vaguely written" in that it does not clearly define the scope of the "obligation" that we held violative of § 100.[2] It interpretsLangan as holding that the only items that constituted an "obligation" owned by the State were those items involved in the first issue, that is, the delinquent taxes and costs bid in by the State pursuant to § 40-10-18. It characterizes as dicta our discussion of the interim taxes, which were the subject of the second issue. We disagree with that characterization.
Following its disposal of the first issue in Langan, the Court stated: "Whether the State can . . . collect from the redemptioners the unassessed taxes for the period between its purchase at the tax sale and the . . . sale more than five years later to the 'best price' purchasers under § 40-10-135, is another matter." Langan,539 So.2d at 179. (Emphasis in original.) "In the present case, the matter appears to be a nonissue," the Court continued, "because the State is not seeking to collect these unassessed taxes. However, if they are at all collectable, they are collectable only by the appropriate taxing authority, not by a private individual, unless that individual is obligated, upon collecting them, to remit the taxes to the taxing authority."Id. (Emphasis in original.) As illustrated by the following observations, these statements cannot be dismissed as dicta.
First, although the "appropriate taxing authority" was not technically a party in Langan, as it is in this case, this Court, nevertheless, was directly confronted with the issue involving the proper disposition of the interim taxes, because the trial court effectively awarded those taxes to the State by expressly conditioning the plaintiffs' rights to redeem on payment of the interim taxes to the State.Id. at 176. Second, although the unconstitutionality of the assignment provision of § 40-10-135 represented only one of three alternative grounds for the trial court's holding, this Court, noting the "importance of the issues presented,"id., restricted its review of the trial court's judgment exclusively to the constitutional ground. Third, a cursory examination of the dissenting opinion, which devoted more than a full page of text, id. at 182-83, 187 (Maddox, J., dissenting), to criticism of the majority's treatment of this specific issue, reveals that the dissenting Justices understood the majority's conclusion regarding the nonassignability of the interim taxes to be more than dicta. Thus, Langan must be understood as holding, interalia, that the redemptioner's liability for the interim taxes constitutes a State-owned obligation, which, therefore, cannot constitutionally be assigned or transferred to the tax deed purchaser for less than face value. Thus, the provision of § 40-10-135 purporting to effect such a "transfer" is invalid.
M R further contends that if Langan does so hold, then that case is "bad law" and should be overruled. More specifically, it argues that such a holding would incorrectly characterize the post-sale taxes as an "obligation," thus improperly bringing § 40-10-135 into conflict with § 100. Preferring, instead, to characterize the amount of the interim taxes as a statutory "condition," or the price of a "redemptive privilege," it contends that no obligation to the State for the interim taxes survives the § 40-10-18 tax sale. Consequently, it contends, *Page 438 
§ 40-10-135 does not transfer a State-owned "obligation" and, therefore, does not contravene the constitution.
We find this contention to be contrary to the clear and consistent language of the statutory scheme. For example, §40-10-132 expressly limits the State's authority to sell the property at a private sale, three years after the §40-10-18 sale, to the receipt of an amount commensurate with the sum of the interim taxes. Similarly, the redemptioner's compliance with § 40-10-121(a) is expressly defined by its payment to the State of the interim taxes. Also, §40-10-83, pursuant to this Court's construction of the predecessor of that section, requires the redemptioner's payment of the interim taxes. Standard Contractors SupplyCo. v. Scotch, 247 Ala. 517, 25 So.2d 257 (1946). See also Ala. Code 1975, § 6-2-2(d) (general limitations-of-actions provisions "shall not apply to any liens to secure the payment of taxes").
The intent of the legislature, thus clearly expressed, is to preserve the former owner's liability for the interim taxes. This liability exists in the form of a "springing lien" — triggered by the exercise of the redemption right. Any proposed distinctions between "condition" and "obligation" are purely illusory, because, to the redemptioner, the result is the same. Finding no merit in arguments based on such distinctions, nor any other reason to disturb Langan, we will not further belabor issues regarding its applicability or the soundness of its holdings.
 II. Vested Rights
M R contends that the abrogation of its right to collect the interim taxes on the subject property through the retroactive application of Langan violates U.S. Const. art. I, § 10, cl. 1, which prohibits state laws "impairing the obligations of contracts" and violates the due process guarantees of the Fourteenth Amendment.
The right to determine the retroactive or prospective application of a decision invalidating a statute on constitutional grounds inheres in this Court and this Court will exercise that right "on a case-by-case basis," Exparte Coker, 575 So.2d 43, 51 (Ala. 1990), as the "interest of justice" requires. Id. (quotingLinkletter v. Walker, 381 U.S. 618, 628,85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965)). In making this determination, we consider, inter alia, the "extent of reliance" on the invalidated statute, Halliday v.United States, 394 U.S. 831, 832, 89 S.Ct. 1498, 1499,23 L.Ed.2d 16 (1969); the result sought by the legislature through its enactment of the invalidated statute; the orderly administration of justice; the balance of the equities of the case; and public policy. Ex parte Coker,575 So.2d at 51-52. On balance, these considerations weigh against the retroactive application of Langan.
The provision of § 40-10-135 assigning to the tax deed purchaser the right to demand payment of the interim taxes first appeared as Act No. 2, § 122, 1885 Ala. Acts 21, codified successively at Ala. Code 1886, § 614; Ala. Code 1897, § 4102; Ala. Code 1907, § 2325; Ala. Code 1923, § 3123; and Ala. Code 1940 and 1958 (recompiled), tit. 51, § 318. The provision in § 40-10-134 expressly allowing the State to sell tax property for the "best price obtainable" first appeared in Act No. 328, § 302, 1915 Ala. Acts 282, codified successively at Ala. Code 1923, § 3122; and Ala. Code 1940 and 1958 (recompiled), tit. 51, § 317. The concerted application of these two provisions creates the constitutional conflict with which we are here concerned — a situation that existed apparently unchallenged from 1915 to 1988.
That the concerted application of these provisions has served to encourage tax deed purchases, thus facilitating the return of property to the tax rolls, is not to be denied. This purpose is more fully explained by the following remarks inLangan:
 "In its amicus brief, the State contends that the record shows that it has been difficult, if not almost impossible, for the State land commissioner to sell lands under § 40-10-132, because, the State argues, 'a potential tax purchaser must pay all the taxes that were due on the lands at the time of the sale to the State, and all the taxes that have accrued from the *Page 439 
date the land was bid in for the State to the date of sale by the State to the tax title purchaser,' and because
 " 'tax title purchasers are aware of the former owner's right of so-called "judicial" redemption under § 40-10-83. Because of this section, a § 40-10-132 purchaser . . . realizes that he, upon redemption by the former owner, can only require the former owner to reimburse him for what the taxes would have been had the former owner redeemed from the State (the price he has paid to the State), plus interest thereon at the rate of 6% per annum. The 6% interest rate provides an extremely small rate of return for what is sometimes a large, and always risky, investment.' "
539 So.2d at 178. (Emphasis in original.)
Moreover, this Court has, in commenting on Ala. Code 1940, tit. 51, § 318, the predecessor of § 40-10-135, stated: "The effect of these sections is to place the purchaser in the shoes of the state, so to speak, giving to the purchaser whatever rights the state might have had if the sale had not been made." Quinn v. Hannon, 262 Ala. 630, 634,80 So.2d 239, 242 (1955). Although the comment was clearly dictum in relation to a claim for interim taxes, it at least did nothing to dissuade potential tax deed purchasers from relying on the assignment provision of § 40-10-135.
In view of these factors, it is not unreasonable to assume extensive reliance by tax deed purchasers on the right to receive the interim taxes, or to assume that it was with this expectation that M R purchased its tax deed on December 8, 1987. Under the law as it existed at the time it purchased the property, M R, on the judgment date of January 22, 1992, would have been entitled to approximately $1,133 in addition to the amount it received pursuant to that judgment. Thus, we hold that a "best-price" tax deed purchaser, upon the failure of his title to property for which a tax deed was issued on, or prior to, November 23, 1988, the date on which Langan's holdings were announced, is entitled to receive the interim taxes, pursuant to the assignment provision in § 40-10-135, but that the State is entitled to those taxes on property for which tax deeds have been issued after that date. The judgment of the trial court is, therefore, reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, STEAGALL, KENNEDY and INGRAM, JJ., concur.
MADDOX, J., dissents.
[1] Better Houses has not filed a brief in this case.
[2] This case differs from Langan in two notable respects. First, unlike Langan, this case presents no issue regarding the State's claim to the taxes and costs specified in § 40-10-18, because the price paid the State by M R exceeded the amount bid in by the State, pursuant to § 40-10-18. Second, unlike Langan, this appeal is prosecuted, in part, by the revenue commissioner, claiming the right to receive the interim taxes.