THOMPSON, Presiding Judge.
Rioprop Holdings, LLC ("Rioprop"), appeals from a judgment the Baldwin Circuit Court ("the trial court") entered in favor of Compass Bank ("Compass") and Walter K. Striplin in this action involving a dispute over title to a unit in the Dunes Condominiums in Gulf Shores ("the property").[1] In *676 the judgment, the trial court, among other things, divested Rioprop of any interest it had in the property and determined that Striplin had fee-simple title to the property.
The record indicates the following. In 2007, Striplin owned the property. Compass held a mortgage on the property. Striplin failed to pay the 2007 property taxes for the property, so on May 27, 2008, the Baldwin County revenue commissioner conducted a tax sale of the property. Plymouth Park Tax Services ("Plymouth") purchased the property for $36,826.16 at the tax sale. However, Plymouth never took action to obtain possession of the property, and it did not notify Compass of its interest in the property.
In November 2011, Plymouth obtained a tax deed on the property. It subsequently conveyed its interest in the property to Propel Financial 1, LLC ("Propel"). Joseph Lassen, the in-house counsel for Propel, testified that, in 2014 or 2015, Propel purchased Plymouth and all of its assets, including the property. Lassen said that Rioprop, "which owns our REO [real estate owned] aspect of Propel, is a separate entity that manages the REO, real estate owned properties." On February 4, 2016, Propel filed a civil action ("the action") in the trial court to enforce its interest in the property. During the pendency of the action, Rioprop was substituted for Propel. For ease of reference, we refer to Rioprop when discussing the actions of Plymouth, the tax purchaser, or Propel throughout the remainder of this opinion.
In its complaint, Rioprop alleged five counts, including a count seeking a declaration that it held an enforceable lien on the property, with priority over all other liens; a count seeking to eject everyone who claimed an interest in the property and to vest possession in Rioprop; a count seeking to quiet title of the property in Rioprop; a count to establish and enforce a tax lien in the event the trial court determined that Rioprop was not entitled to possession; and a count alleging unjust enrichment based on the taxes that Rioprop had paid since purchasing the property in the event that the trial court determined that it was not entitled to possession of the property or to a lien on the property.
Compass and Striplin filed separate motions to dismiss the ejectment and quiet-title claims on the ground that the applicable limitations period had expired as to those claims. In separate orders dated July 15, 2016, the trial court granted the motions to dismiss those claims. Compass also filed a counterclaim seeking a declaration that Rioprop did not have an interest in the property because, it said, Rioprop was time-barred from seeking possession. Compass further claimed that any interest Rioprop might have had in the property had vested in Striplin, subject to Compass's mortgage.
On April 17, 2017, an ore tenus hearing was held on the remaining issue of whether Rioprop was entitled to recover the amount it had paid for the property at the tax sale, the accumulated interest on that amount, the amount it had paid for expenses such as property taxes and insurance, and an attorney fee. At the hearing, Lassen testified that the total amount Rioprop claimed was $117,372.79. On cross-examination, however, Lassen acknowledged that he did not have a copy of the insurance policy or bills for the premiums that had been paid. Lassen also admitted that, other than a "payoff statement" that included a description of the expenses paid in connection with the property, he did not have receipts, copies of *677 checks, or other documents to support Rioprop's claim that it was owed $117,372.79 or entitled to a lien in that amount. Lassen also testified that Rioprop had never demanded possession of the property from Striplin.
On May 1, 2017, the trial court entered a judgment in favor of Striplin as to Rioprop's contention that it held an enforceable lien with priority over all other liens on the property. The trial court also denied Rioprop's request to establish and enforce a lien pursuant to §§ 40-10-70 and -76, Ala. Code 1975. As to Rioprop's unjust-enrichment claim against Striplin, the trial court found in favor of Rioprop and ordered Striplin to pay Rioprop $5,190.36. In addition, the trial court divested Rioprop of any interest it had in the property and vested title of the property in fee simple absolute to Striplin. The trial court then explicitly stated that the judgment had disposed of all matters as to all parties. Rioprop appealed to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
Rioprop argues on appeal that the trial court erred in dismissing its claims for ejectment and to quiet title. In its brief on appeal, Rioprop states that the trial court's order "did not provide any clue as to what legal or factual support upon which it based its decision." In their motions to dismiss the ejectment and quiet-title claims, both Compass and Striplin argued that those claims were time-barred.
" '[T]he standard for granting a motion to dismiss based upon the expiration of the statute of limitations is whether the existence of the affirmative defense appears clearly on the face of the pleading. Sims v. Lewis, 374 So.2d 298 (Ala. 1979) ; Browning v. City of Gadsden, 359 So.2d 361 (Ala. 1978) ; Wright & Miller, Federal Practice and Procedure, Civil& 1357 [sic], at 605 (1969).'
" Braggs v. Jim Skinner Ford, Inc., 396 So.2d 1055, 1058 (Ala. 1981)."
Treadwell v. Farrow, [Ms. 2160667, Oct. 27, 2017] 253 So.3d 967, 969 (Ala. Civ. App. 2017).
Compass and Striplin supported their contention that the ejectment and quiet-title claims were barred by the applicable statute of limitations by citing §§ 40-10-29 and -82, Ala. Code 1975.
Section 40-10-29, which deals with the sale of land for tax purposes, provides:
"After the expiration of three years from the date of the sale of any real estate for taxes, the judge of probate then in office must execute and deliver to the purchaser, other than the state, or person to whom the certificate of purchase has been assigned, upon the return of the certificate, proof that all ad valorem taxes have been paid, and payment of a fee of five dollars ($5) to the judge of probate, a deed to each lot or parcel of real estate sold to the purchaser and remaining unredeemed, including therein, if desired by the purchaser, any number of parcels, or lots purchased by him at such sale; and such deed shall convey to and vest in the grantee all the right, title, interest and estate of the person whose duty it was to pay the taxes on such real estate and the lien and claim of the state and county thereto, but it shall not convey the right, title or interest of any reversioner or remainderman therein."
(Emphasis added.)
Section 40-10-82, part of the same chapter as § 40-10-29, provides:
"No action for the recovery of real estate sold for the payment of taxes shall lie unless the same is brought within *678 three years from the date when the purchaser became entitled to demand a deed therefor; but if the owner of such real estate was, at the time of such sale, under the age of 19 years or insane, he or she, his or her heirs, or legal representatives shall be allowed one year after such disability is removed to bring an action for the recovery thereof; but this section shall not apply to any action brought by the state, to cases in which the owner of the real estate sold had paid the taxes, for the payment of which such real estate was sold prior to such sale, or to cases in which the real estate sold was not, at the time of the assessment or of the sale, subject to taxation. There shall be no time limit for recovery of real estate by an owner of land who has retained possession. If the owner of land seeking to redeem has retained possession, character of possession need not be actual and peaceful, but may be constructive and scrambling and, where there is no real occupancy of land, constructive possession follows title of the original owner and may only be cut off by adverse possession of the tax purchaser for three years after the purchaser is entitled to possession."
(Emphasis added.)
A contention identical to Rioprop's contention-that the ejectment claim and the claim to quiet title are not time-barred-has already been considered and rejected by our supreme court. In Reese v. Robinson, 523 So.2d 398 (Ala. 1988), our supreme court discussed the application of the limitations period set forth in § 40-10-82, explaining:
" Code 1975, § 40-10-82, states that no action for the recovery of land sold for the payment of taxes 'shall lie unless the same is brought within three years from the date when the purchaser became entitled to demand a deed therefor.' [The landowner] successfully argued to the trial court that this Code section required that [the tax purchaser], in order to cut off [the landowner's] right of redemption, possess the property exclusively and adversely for a three-year period, and that, according to undisputed evidence, he had not done so. Section 40-10-82 has been construed as a 'short' statute of limitations ( Williams v. Mobil Oil Exploration & Producing Southeast, Inc., 457 So.2d 962 (Ala. 1984) ), and does not begin to run until the purchaser of the property at a tax sale has become entitled to demand a deed to the land; and the tax purchaser is entitled to 'quiet title' relief only after being in exclusive, adverse possession for the statutory three-year period. Gulf Land Co. v. Buzzelli, 501 So.2d 1211 (Ala. 1987).
"Additionally, this limitations period has been held to bar an action by the tax purchaser to recover property sold for the payment of taxes, unless the tax purchaser brought the action within three years from the date he was entitled to demand a tax deed. Grayson v. Muckleroy, 220 Ala. 182, 124 So. 217 (1929). Also, if the taxpayer/landowner has remained in possession of the property for three years after the date when the tax purchaser became entitled to demand a tax deed, this statute would vest title in the taxpayer/landowner and protect him from any action brought by the tax purchaser to recover the property. Johnson v. Stephens, 240 Ala. 419, 199 So. 828 (1941) ; and Sherrill v. Sandlin, 232 Ala. 389, 168 So. 426 (1936)."
523 So.2d at 400 (footnotes omitted; emphasis added). In its brief on appeal, Rioprop contends that our supreme court's holding in Reese, supra, "is ... a misinterpretation of the law." We note, however, that even if we were to agree with Rioprop, *679 "as an intermediate appellate court, we are bound by the holdings of our supreme court. See, e.g., Kanellis v. Pacific Indem. Co., 917 So.2d 149, 154 (Ala. Civ. App. 2005)." Frederick v. Frederick, 92 So.3d 792, 795 (Ala. Civ. App. 2012).
The federal bankruptcy court for the Middle District of Alabama, which also relied on Reese, discussed the applicable statute of limitations and related caselaw.
"The statute of limitations in § 40-10-82 can serve not only to bar a tax purchaser's ejectment action, but also to re-vest legal title in the land owner. Reese [v. Robinson], 523 So.2d [398] at 400 [ (Ala. 1988) ]. In Johnson v. Stephens, 240 Ala. 419, 199 So. 828 (1941), a father lost legal title to property through a 1931 tax sale and 1933 tax deed delivery but retained exclusive and adverse possession until his death in 1938, at which point the tax purchaser obtained possession of the property. Johnson, [ 240 Ala. at 422,] 199 So. at 829. The court held that the suit of the father's heirs against the tax purchaser, to partition and sell the property for the heirs' benefit, was not barred because the prior version of § 40-10-82 vested the father with an absolute defense against the tax purchaser, which then vested in the father's heirs at his death. Id."
In re Washington, 551 B.R. 644, 650-51 (Bankr. M.D. Ala. 2016). The bankruptcy court then summarized the applicability of the statute of limitations, writing:
"When land is sold under Alabama law due to non-payment of taxes, the tax debtor has three years (or more) to redeem his interest in the land without losing legal title to the property-known as administrative redemption. If the tax debtor fails to redeem his interest in the land within three years after the foreclosure, the tax purchaser may demand a tax deed (or the State may sell one) that extinguishes the tax debtor's legal interest in the land.
"The tax purchaser is entitled to possession of the land when he purchases it at the tax sale (or from the State). If the tax purchaser obtains a tax deed and maintains adverse possession of the land, the tax debtor has three years to redeem the land by filing suit-known as judicial redemption. If the tax debtor has at least constructive or scrambling possession of the land (i.e., the tax purchaser does not adversely possess the land), then notwithstanding the tax deed the tax debtor has a right to redeem the land for as long as he retains possession. Finally, if the tax purchaser obtains a tax deed but the tax debtor remains in adverse possession of the land, title to the land will revert back to the tax debtor unless the tax purchaser files an ejectment action within three years."
551 B.R. at 651 (emphasis added).
In this case, Rioprop purchased the property at a tax sale on May 27, 2008. Three years later, on May 27, 2011, Rioprop was entitled to obtain a tax deed for the property. See § 40-10-29, Ala. Code 1975. Three years after that date, May 27, 2014, Rioprop was entitled to seek to quiet title to the property if it had been in adverse possession of the property for three years or if it had filed an ejectment action within those three years. However, Rioprop did not file its ejectment action until February 4, 2016, nearly two years after the limitations period for such an action had expired. Furthermore, in its complaint, Rioprop did not aver that it had been in adverse possession of the property for three years. Instead, it stated in the complaint that it had been in "constructive possession by virtue of being the holder of the Tax Deed." Rioprop alleged that Striplin and/or other defendants claimed to be *680 in possession of the property and asked the court to place it in actual possession.
Moreover, in its answer to Compass's and Striplin's motions to dismiss, Rioprop did not allege that it had adversely possessed the property. Instead, it argued that it had constructive possession of the property and, therefore, had a right to the property pursuant to § 6-6-540, Ala. Code 1975, which provides for a cause of action to "settle the title" to lands. In Gulf Land Co. v. Buzzelli, 501 So.2d 1211 (Ala. 1987), however, our supreme court determined that possession and ownership of land purchased pursuant to a tax sale is governed by Title 40, Chapter 10, of the Alabama Code of 1975, and not the statutes governing quieting title of disputed property. In Buzzelli, our supreme court held that, even if the tax purchaser in that case had made out a prima facie case to quiet title pursuant to the requirements of § 6-6-540, the tax purchaser would still not have prevailed because of the application of § 40-10-82. Our supreme court explained that, in a dispute over ownership of land involving a tax purchaser, the landowner's
"possession may be constructive or scrambling, and, where there is no real occupancy of the land, constructive possession follows the title of the original owner and can only be cut off by the adverse possession of the tax purchaser. Stallworth v. First Nat. Bank of Mobile, 432 So.2d 1222 (Ala. 1983) ; Hand v. Stanard, 392 So.2d 1157 (Ala. 1980) ; O'Connor v. Rabren, 373 So.2d 302 (Ala. 1979).
"... In order for the short period of § 40-10-82 to bar redemption under § 40-10-83, the tax purchaser must prove continuous adverse possession for three years after he is entitled to demand a tax deed. Stallworth, 432 So.2d at 1224. This statute applies to cases where the land is purchased from the State, as well as to instances where the purchase is made from the tax collector. Merchants National Bank of Mobile v. Lott, 255 Ala. 133, 50 So.2d 406 (1951)."
Gulf Land Co., 501 So.2d at 1213.
Because the face of the complaint indicates that Rioprop's claims for ejectment and to quiet title demonstrate that those claims were filed nearly two years after the applicable limitations period had expired under § 40-10-82, we conclude that the trial court properly dismissed those claims.[2]
On appeal, Rioprop raises two additional arguments regarding the claims for ejectment and to quiet title. Because we have already determined that those claims are time-barred, thus disposing of those claims, we need not address those arguments.
Rioprop also argues that the trial court erred in divesting it of its interest in the property without ruling on Striplin's motion for redemption and by not establishing the amount of money Striplin was required to pay to redeem the property. Before the trial, Striplin had filed a motion for a determination of the amount necessary for him to judicially redeem the property. After the trial of this matter, the trial court entered a judgment divesting Rioprop of "any and all interest" it had in the property and vesting title to the property "in absolute fee simple" to Striplin.
In its appellate brief, Rioprop states that the trial court improperly "stripped" it of its title without requiring Striplin to redeem the property pursuant to redemption *681 statutes. However, Rioprop's argument ignores the holdings of Reese and Washington. As our supreme court explained in Reese, "if the taxpayer/landowner [here, Striplin] has remained in possession of the property for three years after the date when the tax purchaser became entitled to demand a tax deed, [ § 40-10-82 ] would vest title in the taxpayer/landowner and protect him from any action brought by the tax purchaser to recover the property." 523 So.2d at 400.
Because Rioprop failed to exercise its right to obtain possession of the property during the three years after May 27, 2011 (the date Rioprop was entitled to demand the tax deed for the property), and took no action to actually possess the property or to file an ejectment action, title to the property reverted to, or was "re-vested" in, Striplin. Id.; and Washington, 551 B.R. at 651. Rioprop has not cited any authority, and our research has revealed no authority, indicating that, once title to the property was "re-vested" in Striplin, he was required to pay any amount to redeem the property. Accordingly, we conclude that the trial court did not err in refusing to require Striplin to pay Rioprop to redeem the property.
Finally, Rioprop argues that, even if there were "some legitimate ground for denying [it] possession or title" to the property, it was still entitled to a lien for expenses it had incurred, such as the payment of property taxes, plus statutory interest. Specifically, Rioprop argues that, pursuant to § 40-10-29, when it received the tax deed to the property in November 2011, it was also given "the lien and claim of the state and county thereto." Rioprop maintains that it stepped into the shoes of the State of Alabama and enjoyed the same priority with regard to preexisting liens.
We have found no authority that would allow Rioprop to establish or maintain a lien on property in which it no longer has an interest. There is no language in § 40-10-29 that would provide a tax purchaser the ability to maintain a lien for the property tax paid when the property reverted to the landowner by virtue of the tax purchaser's failure to act within the limitations period. In support of its contention that, for purposes of establishing an ad valorem tax lien, it stepped into the shoes of the State of Alabama, Rioprop cites Langan v. Altmayer, 539 So.2d 173 (Ala. 1988). We find nothing in that opinion that supports Rioprop's position, however. The language Rioprop refers to in making its argument that it stepped into the shoes of the State is found only in Justice Maddox's dissenting opinion. Id. at 186 (Maddox, J., dissenting).
After studying the arguments of the parties and the applicable law, we conclude that, under the circumstances of this case, there is no legal basis for allowing Rioprop to establish a lien to recover the expenses it paid in its attempt to acquire the property. Accordingly, we hold that the trial court did not err in denying Rioprop's request for a lien.
Rioprop has failed to demonstrate that the trial court erred in divesting it of any rights or interests in the property and in awarding the property to Striplin in fee simple absolute. Therefore, the judgment of the trial court is affirmed.
AFFIRMED.
Pittman, Thomas, Moore, and Donaldson, JJ., concur.

Also named as defendants in Rioprop's civil action were Henrietta Jordan and Wesley Acee, as tenants in common with Striplin; Branch Banking & Trust, known as BB & T, as a junior mortgage holder; the United States of America; and Sage Development, LLC. The United States of America and Jordan filed disclaimers of interest. Acee, BB & T, and Sage did not file responsive pleadings and did not appear at trial.

We further note that Rioprop's response to the motions to dismiss failed to create a question regarding the timeliness of those claims.